UNITED STATES, Appellee,

v.

John M. MACK, Private First Class, U.S. Army, Appellant.

No. 38,515.
CMR 438413.

U. S. Court of Military Appeals.

Oct. 6, 1980.

For Appellant: *Captain Kevin E. O'Brien* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Grifton E. Carden, Captain Melvin Abercrombie* (on brief); *Lieutenant Colonel John F. Lymburner, Captain William J. Douglas.*

For Appellee: *Major Robert B. Williams* (argued); *Colonel R. R. Boller, Major Ted B. Borek* (on brief); *Major Douglas P. Franklin.*

*Opinion*

EVERETT, Chief Judge:

On April 24 and May 16, 1979, appellant was tried before a general court-martial at Fort Ord, California, by a military judge sitting alone. After pleas of guilty to possession and sale of marihuana and not guilty to possession and sale of cocaine, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, the military judge found the appellant guilty of all charges. The judge sentenced the appellant to a bad-conduct discharge, 8 months' confinement, total forfeitures, and reduction to the grade of Private E-1. The sentence was approved by the convening authority. On December 31, 1979, the United States Army Court of Military Review summarily affirmed the findings and sentence as approved. We granted review of this single assigned issue:

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF THE APPELLANT BY ADMITTING INTO EVIDENCE PROSECUTION EXHIBIT 8 (RECORD OF NONJUDICIAL PUNISHMENT UNDER ARTICLE 15, UCMJ) DURING THE SENTENCING PORTION OF TRIAL?

I

During the presentencing stage trial counsel offered in evidence as prosecution exhibit 8 a completed DA Form 2627, headed "Record of Proceedings under Article 15, UCMJ." It reflected that on July 7, 1978, the appellant had agreed to accept nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, for being derelict in performing guard duties, and had received as punishment a reduction to the grade of Private First Class; forfeiture of $110.00 pay; restriction "to the company area, place of duty, place of worship, and the consolidated dining facility for a period of seven (7) days"; and the performance of extra duty for a week.

The defense counsel declined to offer any objection to this record when he was asked specifically by the military judge if he had seen the Article 15 exhibit and wanted to object to it. Absent any objection by the defense, prosecution exhibit 8 was admitted in evidence by the military judge.

However, the appellate defense counsel now complains that the record of prior Article 15 punishment should not have been admitted for sentencing purposes at appellant's court-martial since no evidence in writing or otherwise established on the record that appellant had validly waived his statutory right to refuse the Article 15 punishment and thereby compel either dismissal of the charges or trial by court-martial. It is argued that, before the appellant could have waived his right, he had to be apprised of the ramifications of accepting nonjudicial punishment, including the fact that the Article 15 record could be used against him in subsequent criminal proceedings. Moreover, only after the appellant had conferred with counsel could he execute a valid waiver of rights; and the "check block advice" found on the DA Form 2627 did not suffice to establish an affirmative waiver of the right to demand trial by court-martial, instead of accepting nonjudicial punishment under Article 15.

Accordingly, appellate defense counsel maintains that prosecution exhibit 8 was inadmissible, because it did not comply with the counsel and waiver requirements set forth in *United States v. Booker*, 5 M.J. 238 (C.M.A.1977), *vacated in part*, 5 M.J. 246 (C.M.A.1978), and explained in *United States v. Mathews*, 6 M.J. 357 (C.M.A.1979). He submits also that the appellant was prejudiced by the erroneous admission of the Article 15 record, since this may have induced a heavier sentence. Therefore, counsel asks that appellant's sentence be reassessed on account of this alleged error.

We have carefully evaluated this argument in light of our own precedence and recent Supreme Court decisions concerning the right to the assistance of counsel. We conclude that here receipt in evidence of the record of nonjudicial punishment was not error.

## II

The Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The Framers of the Bill of Rights, when originally drafting this provision, probably contemplated only "the right of an accused in a criminal prosecution in a federal court to employ a lawyer to assist in his defense." *Scott v. Illinois*, 440 U.S. 367, 370, 99 S.Ct. 1158, 1160, 59 L.Ed.2d 383 (1979). However, for almost half a century the right to counsel has been given a broader construction, since "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel."[1] *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). In *Powell*, the Supreme Court extended the right to counsel to indigent defendants in a capital case and held that, in view of the circumstances of that case, the trial court's failure to afford the defendants reasonable time and opportunity to secure counsel constituted a denial of due process. The Court further held that the dire circumstances were such that it made

> the necessity of counsel . . . so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment. . . . To hold otherwise would be to ignore the

fundamental postulate, already adverted to, "that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard." *Id.* at 71–72, 53 S.Ct. at 65, quoting from *Holden v. Hardy*, 169 U.S. 366, 18 S.Ct. 383, 42 L.Ed. 780 (1898). Even though *Powell* refused to decide whether the right to counsel existed in noncapital cases, this landmark decision later provided the rationale for broadly extending the scope of the right to counsel.

The Supreme Court next made counsel available to indigent defendants in noncapital cases in the Federal courts. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). After retreating in *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942),[2] the Supreme Court regained its forward momentum in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which relied on *Powell* in ruling that any indigent defendant is entitled to the assistance of counsel in a felony trial—whether for a federal or state offense. The Supreme Court deemed it "fundamental and essential to a fair trial" that one so accused be given appointed counsel. *Id.* at 342, 83 S.Ct. at 795.

In 1967, in the case of *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, the reach of the Sixth Amendment was extended to prohibit the use of felony conviction records of uncounseled defendants

---

1. "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right

of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963).

2. This case held that only under special circumstances need the trial court furnish counsel to indigents in state felony trials.

"to support guilt or enhance punishment for another offense." *Id.* at 115, 88 S.Ct. at 262. The defendant there was convicted in a Texas court of "assault with malice aforethought with intent to murder; repetition of offense," *id.* at 110, 88 S.Ct. at 259, and the jury fixed his punishment at 10 years in the Texas State Penitentiary. Burgett had been charged in a five–count indictment, wherein the first count alleged that he cut and stabbed one Bradley with the intent to kill. Pursuant to Texas' recidivist statutes, the other four counts of the indictment alleged a previous Texas conviction for burglary and three previous Tennessee convictions for forgery. By reason of those prior convictions, if valid, Burgett would suffer life imprisonment upon conviction of the felony charged in the first count.

At the outset of the trial, upon the reading of the indictment, the jury learned of these earlier convictions. The prosecutor, in the jury's presence, later offered into evidence two records of one of the Tennessee convictions. The first such record showed that Burgett had not been represented by counsel in the Tennessee trial; the second version omitted reference to the absence of counsel but did not show a waiver of the right to counsel. When Burgett's lawyer objected to the admission of either record because the judgment on its face showed Burgett had not been represented by counsel at the Tennessee trial, the judge reserved ruling on this objection.

Thereafter, the prosecutor offered into evidence a certified copy of the prior Texas record of conviction. Since Burgett's lawyer did not offer any objection, the Texas record of conviction was received into evidence. A hearing ensued—partly in the jury's presence—regarding this conviction. At the close of this hearing, defense counsel objected to the admission of the Texas conviction on the ground that on its face it was void under Texas law. Sustaining this objection, the judge struck the record as evidence. Contemporaneously, he admitted the second version of the Tennessee record of conviction; but subsequently he instructed the jury not to consider any of the prior convictions for any purpose. This ruling

was apparently based on insufficiency of the evidence to trigger application of the Texas recidivist statutes. Accordingly, the jury did not enhance Burgett's punishment pursuant to the Texas recidivist statute.

On appeal, Burgett contended that the judge had committed reversible error in permitting the indictment to be read to the jury and in admitting as evidence the second version of the Tennessee record of conviction. The Supreme Court, agreeing in large part, found "the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void." *Id.* at 114, 88 S.Ct. at 261. The Court further wrote:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense (see *Greer v. Beto*, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.
>
> The admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon v. Wainwright* is inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error "harmless beyond a reasonable doubt" within the meaning of *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. (footnote omitted).

*Id.* at 115, 88 S.Ct. at 262, 19 L.Ed.2d at 324–25.

In 1972, both *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592, and *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374, followed *Burgett v. Texas, supra. In Tucker*, where the defendant was tried on a charge of armed bank robbery, the prosecutor was allowed on cross-examination to impeach the defendant's credibility by asking him whether he

had any prior felony convictions. The defendant admitted to three such convictions—a Florida conviction in 1938, a Louisiana conviction in 1946, and a second Florida conviction in 1950. At the end of the trial, he was found guilty as charged. During the sentencing hearing, the court gave "explicit attention" to his previous felony convictions. The trial judge then sentenced him to the maximum 25–year prison term.

After it was conclusively determined several years later that the defendant's 1938 Florida conviction and his 1946 Louisiana conviction were unconstitutional because he had neither been represented by a lawyer nor waived his right to one, the defendant initiated proceedings in the Federal district court wherein he contended that the introduction at his 1953 trial of evidence of his prior unconstitutional convictions had vitiated the guilty verdict. Although the District Judge agreed that it was error to use the invalid convictions to impeach the defendant, he concluded the error was harmless beyond a reasonable doubt since the evidence of guilt was irrefutable.

Although sustaining the District Judge's conclusion that the error was harmless, the Court of Appeals remanded the defendant's case, "for resentencing 'without consideration of any prior convictions which are invalid under *Gideon v. Wainwright, [supra]*." *Id.*, 404 U.S. at 446, 92 S.Ct. at 591. The Court of Appeals had found "a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed." *Id.* at 445–46, 92 S.Ct. at 591.

Thereafter, the Government appealed to the United States Supreme Court arguing:

[T]hat a federal district judge [had] wide and largely unreviewable discretion in imposing sentence, and that in exercising that discretion his relevant inquiry is not whether the defendant has been formally convicted of past crimes, but whether and to what extent the defendant has in fact engaged in criminal or antisocial conduct. Further, the Government argues, in view of other detrimental information about the respondent possessed at the time of sentencing by the trial judge, it is highly unlikely that a different sentence would have been imposed even if the judge had known that two of the respondent's previous convictions were constitutionally invalid. Accordingly, the Government concludes that to now remand this case for resentencing would impose an "artificial" and "unrealistic" burden upon the District Court.

*Id.* at 446, 92 S.Ct. at 591.

However, the Supreme Court rejected this argument on grounds that the defendant's sentence was "founded at least in part upon misinformation of constitutional magnitude." *Id.* at 447, 92 S.Ct. at 592. The Court concluded that

the real question here is not whether the results of the Florida and Louisiana proceedings might have been different if [Tucker] had had counsel, but whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.

*Id.* at 448, 92 S.Ct. at 592. (footnote omitted). Thereupon, the Court concluded:

We agree with the Court of Appeals that the answer to this question must be "yes." For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who, beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang.

*Id.* (footnote omitted). Thus, the Supreme Court held that to permit a conviction obtained in violation of the defendant's right to counsel to be used against him to enhance his sentence is to erode his constitutional right to the assistance of counsel.

*Loper v. Beto, supra,* concerned a trial for statutory rape wherein the prosecutor was allowed to cross-examine Loper about his prior criminal record in order to impeach his credibility. Detailing his record, Loper admitted that he had four prior felony convictions during the period 1931–1940. He was convicted and sentenced to be imprisoned for 50 years.

Subsequently, in a habeas corpus proceeding in the Federal district court, Loper contended that the prior convictions used to impeach him at trial were void because he had not been represented by counsel in the trials which resulted in those convictions. Both the district court and the court of appeals disagreed with Loper.

Upon its grant of certiorari, the Supreme Court framed the issue for review as follows:

> Does the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case?

*Id.* at 480, 92 S.Ct. at 1018.

A plurality of the justices answered: [3]

> Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law. We can put the matter no better than in the words of the Court of Appeals for the First Circuit:
>
> "We conclude that the Burgett rule against use of uncounseled convictions 'to prove guilt' was intended to prohibit their

use 'to impeach credibility,' for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt." *Gilday v. Scafati,* [1st Cir.] 428 F.2d 1027, 1029.

*Id.* at 483, 92 S.Ct. at 1019.

Later in 1972, the Court's attention was directed in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, to defining more fully the circumstances under which there is a right to counsel. Argersinger had been charged with carrying a concealed weapon—a Florida crime carrying an authorized penalty of imprisonment up to six months and a fine up to $1000. Unrepresented by counsel at his trial, he was convicted and sentenced to jail for 90 days. The Court refused to apply a suggested analogy to the right to trial by jury,[4] which exists only in cases where confinement for six months is imposable.[5] Instead, it held that "no person may be imprisoned for any offense. . . . unless he was represented by counsel." *Id.* at 37, 92 S.Ct. at 2012. The reason for this holding was that

> the limitation was contrary to the express words of the Sixth Amendment, which guarantee its enumerated rights "[i]n all criminal prosecutions"; that the right to jury trial was the only Sixth Amendment right applicable to the States that had

"no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." (footnote omitted).

**3.** Mr. Justice White concurred in the result, being of the view that there were still unresolved factual issues as to whether Loper had counsel at those prior trials; whether he had waived his rights to counsel; and whether the denial of counsel was harmless error.

**4.** In *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968), the Supreme Court reiterated: "Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses." Subsequently, in *Baldwin v. New York,* 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970), it was determined that

**5.** The right to jury trial also has received different treatment from the right to counsel as to retroactivity—apparently because the Supreme Court viewed the right to counsel as more essential to a fair trial for a defendant. *Compare DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) *with Linkletter v. Walker,* 381 U.S. 618, 628 n. 13, 85 S.Ct. 1731, 1737 n. 13, 14 L.Ed.2d 601 (1965).

been held inapplicable to "petty offenses"; that this limitation had been based on historical considerations peculiar to the right to jury trial; and that the right to counsel was more fundamentally related to the fairness of criminal prosecutions than the right to jury trial and was in fact essential to the meaningful exercise of other Sixth Amendment protections. (footnotes omitted).

*Scott v. Illinois, supra,* 440 U.S. at 378–79, 99 S.Ct. at 1164–65 (Brennan, J. dissenting).

In 1976, the Supreme Court refused to apply *Argersinger* to trials by summary courts-martial. In *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), some marines had filed a class action in a United States District Court seeking release from confinement and other *habeas corpus* relief because they had been convicted in trials by summary courts-martial in which they had no counsel. The Supreme Court held that Congress' failure to provide counsel for an accused at a summary court-martial abridges neither the Fifth nor the Sixth Amendments.[6] Writing the principal opinion for the court, Mr. Justice Rehnquist observed that the plaintiffs' Sixth Amendment rights were not violated because a summary court-martial is "not a 'criminal proceeding' within the meaning of the Sixth Amendment" since "there are elements about it which sufficiently distinguish it from a traditional civilian criminal trial."[7] *Id.* at 38, 96 S.Ct. at 1289. He further observed that the plaintiffs' Fifth Amendment rights were not violated, because, "upon an analysis of the interests of the individual and those of the regime to which he is subject, . . . we must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces, U.S.Const., Art. I, § 8, that counsel should not be provided in a summary court-martial." *Id.* at 43, 96 S.Ct. at 1291. In reaching these results, the Justice noted that even though the accused does not have the right to counsel at a summary court-martial, he is afforded various protections under paragraph 79*d*(1) of the Manual for Courts-Martial, United States, 1969 (Revised Edition). "The presiding officer must [apprise] the accused of the charges and the name of the accuser and call all witnesses whom he or the accused desires to call." *Id.* at 32, 96 S.Ct. at 1286. Moreover, the accused has the right to cross-examine witnesses, to remain silent, and to defend against the charges.[8]

Since our decision in *United States v. Booker,*[9] *supra,* the United States Supreme

---

6. In so doing, the Supreme Court rejected this Court's interpretation of *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in *United States v. Alderman,* 22 U.S.C. M.A. 298, 46 C.M.R. 298 (1973). There, Alderman's special court-martial conviction had been reversed and the case remanded to the Court of Military Review for reassessment of his sentence because evidence had been admitted of his prior conviction in a trial by a summary court-martial at which he had no counsel.

7. The opinion did not discuss its implications for a special or general court-martial.

8. According to Justice Rehnquist the issue at hand—unlike some, *see Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975)—was not of a type as to which the expertise of military tribunals could be given special weight. He also noted that the judges of our Court had not been unanimous in *Alderman.* Similarly, unanimity was lacking in this Court when, after *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), we decided *United States v. Booker,* 5 M.J. 238

(C.M.A.1977), *vacated in part* 5 M.J. 246 (C.M. A.1978), which concerned the use for sentencing purposes of prior convictions by summary courts-martial wherein the accused had not been furnished counsel.

9. In this case, Booker complained that two summary court-martial "convictions" had been used by the military judge to escalate his punishment under the provisions of section B, paragraph 127*c* of the Manual for Courts-Martial, United States, 1969 (Revised edition). His theory was that, since the Supreme Court had stated that summary courts-martial are not criminal proceedings, the two convictions were not the criminal "convictions" required to invoke the "escalator clause" under paragraph 127*c.*

Although the Court stated that "[a]ccepting that an attorney is not a necessary prerequisite to such a disciplinary hearing," *id.* at 242, it nevertheless had to "reexamine [the Article 15 and summary court-martial] hearings to ensure compliance with the command of the Supreme Court that they measure up to the essentials of

Court has decided three other important cases which involve the right to counsel under the Sixth Amendment. In *Scott v. Illinois, supra,* the Supreme Court disposed of a question which had been expressly reserved in *Argersinger,*—whether counsel had to be appointed if imprisonment was an authorized punishment but was not actually imposed upon the accused. The answer was "that *Argersinger* did indeed delimit the constitutional right to appointed counsel in state criminal proceedings" and "adopt[ed] . . . actual imprisonment as the line defining the constitutional right to appointment of counsel." *Id.,* 440 U.S. at 373, 99 S.Ct. at 1162. Thus, the Sixth and Fourteenth Amendments to the United States Constitution only compel a state to furnish a lawyer to an indigent criminal defendant if the defendant is actually sentenced to a term of imprisonment—unless the state has otherwise given the accused the right to have the assistance of counsel.[10] In the Court's view, this was the necessary implication of *Argersinger* because:

> The Court in its opinion repeatedly referred to trials "where an accused is deprived of his liberty," 407 U.S. at 32 [92 S.Ct. at 2010] and to "a case that actually leads to imprisonment even for a brief period," 407 U.S. at 33 [92 S.Ct. at 2010]. The Chief Justice in his opinion concurring in the result also observed that "any deprivation of liberty is a serious matter." 407 U.S. at 41 [92 S.Ct. at 2014].

*Id.*

In *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Supreme Court ruled that a felony conviction wherein a defendant had no counsel may nonetheless be used as a basis for imposing on him federal criminal sanctions for possession of a firearm by a felon. Lewis had been convicted in 1961 by a Florida state court for breaking and entering with intent to commit a misdemeanor—conduct which was a felony under the statute. Upon being convicted he was imprisoned and his conviction was never overturned. In 1977, Lewis was arrested in Virginia and later indicted for having knowingly received and possessed a firearm, in violation of 18 U.S.C.App. § 1202(a)(1). Among other things, this statute provides, "Any person who—(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, . . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

At Lewis' bench trial, he had stipulated that the weapon in question had been shipped in interstate commerce. The Government then introduced in evidence an official copy of his 1961 Florida felony conviction. However, prior to trial, his attorney informed the trial judge that Lewis had not been represented by counsel when he was convicted in Florida. After the judge ruled this to be immaterial as to Lewis' status under section 1202(a)(1), Lewis did not attempt to offer other evidence that he lacked counsel at the Florida trial. However, for the purpose of adjudicating Lewis' claim that he had been denied his Fifth and

due process and fair treatment." *Id.* at 242–43. The Court's conclusion was that an independent attorney henceforth would be required to consult with the accused before he makes an election to be tried by summary court-martial or to accept nonjudicial punishment. Conference with an attorney was required because "[t]he consequences of a decision to accept either an Article 15 or a summary court-martial disciplinary action under Article 20 involve due process considerations." *Id.* at 243 (footnote omitted). Additionally, the Court would require—"in order to give some meaning to the due process guarantees of the Fifth Amend-

ment," *id.* (footnote omitted)—that a record of a summary court-martial conviction be used in a later court-martial only for specified purposes and only if this new counsel provision was complied with. The requirement was explicitly extended to the Article 15 procedure in *United States v. Mathews,* 6 M.J. 357 (C.M.A.1979).

10. Three other justices joined Mr. Justice Rehnquist in his principal opinion, and Mr. Justice Powell also joined the opinion, but reluctantly concurred in the new rule, after noting his previous disagreement with the *Argersinger* decision.

Sixth Amendment rights, the Supreme Court assumed that Lewis was not represented by counsel in Florida.

Reasoning that the obvious breadth of the language of section 1201(a)(1) plainly indicates that Congress did not intend to limit its coverage to persons whose convictions are not subject to collateral attack, the Court concluded that the "mere" fact of conviction triggers invocation of the federal firearms statute. As the Court further explained:

> The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational. Enforcement of that essentially civil disability through a criminal sanction does not "support guilt or enhance punishment," see *Burgett*, 389 U.S., at 115, 88 S.Ct., at 262, on the basis of a conviction that is unreliable when one considers Congress' broad purpose. Moreover, unlike the situation in *Burgett*, the sanction imposed by section 1202(a)(1) attaches immediately upon the defendant's first conviction.

*Id.*, 100 S.Ct. at 922.

The dissenting Justices were of the view that this result conflicted with four cases—*Gideon, Burgett, Tucker,* and *Loper*—which the majority had sought to distinguish. For them, "[t]he clear teaching of those decisions is that an uncounseled felony conviction can never be used 'to support guilt or enhance punishment for another offense.'" *United States v. Lewis, supra,* 100 S.Ct. at 924 (Brennan, J., dissenting). Since the constitutional reason for excluding the collateral use of an uncounseled conviction is the unreliability of such a conviction due to the absence of counsel, the dissenting Justices were not convinced by the majority's theory that "the mere *fact* of [Lewis'] prior conviction," distinguishes Lewis' case. Mr. Justice Brennan wrote:

The Court's attempt to distinguish *Burgett, Tucker* and *Loper* on the ground that the validity of the subsequent convictions or sentences in those cases depended on the *reliability* of the prior uncounseled felony convictions while in the present case the law focuses on the mere *fact* of the prior conviction, is unconvincing. The fundamental rationale behind those decisions was the concern that according any credibility to an uncounseled felony conviction would seriously erode the protections of the Sixth Amendment. Congress' decision to include convicted felons within the class of persons prohibited from possessing firearms can rationally be supported only if the historical fact of conviction is indeed a reliable indicator of potential dangerousness. As we have so often said, denial of the right to counsel impeaches "the very integrity of the fact-finding process." *Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965). Accord, *Lakeside v. Oregon,* 435 U.S. 333, 341, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978); *Argersinger v. Hamlin,* 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972). And the absence of counsel impairs the reliability of a felony conviction just as much when used to prove potential dangerousness as when used as direct proof of guilt. Cf. *Loper v. Beto, supra,* 405 U.S., at 483, 92 S.Ct. at 1019 (opinion of STEWART, J.).

*Id.*, 100 S.Ct. at 924–25.

Finally, the Supreme Court ruled in *Baldasar v. Illinois,* —— U.S. ——, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), that an accused's prior conviction in a misdemeanor trial wherein he lacked counsel did not provide a basis later for escalating a second offense to felony status under an Illinois habitual offender statute. Baldasar had been convicted of a misdemeanor theft in an Illinois circuit court, but the record of that proceeding showed that a lawyer had not represented him and he had not waived his right to the assistance of counsel. Nonetheless, he had been convicted, fined

$159, and sentenced to one year of probation. Approximately six months later, Baldasar was charged with taking a $29 shower head from a department store. When the case was tried before a jury, evidence of the prior misdemeanor theft was admitted as evidence of a prior conviction—the prosecutor asking that Baldasar be punished as a felon under the Illinois enhancement-of-punishment statute. The defense counsel argued for exclusion of this evidence because Baldasar had not been represented by counsel at the first trial, so that the conviction was not reliable enough to support increase of the second offense to felony status. However, the jury found Baldasar guilty on the felony charge, whereupon he was sentenced to prison for one to three years. Even though Baldasar's first conviction was constitutionally valid under the rule of *Scott v. Illinois, supra,* since no confinement had been imposed, the Supreme Court held that his prior misdemeanor conviction without counsel still could not be used to enhance the punishment imposable under a statute which authorized a higher sentence if there had been a prior conviction.[11]

### III

■ From our review of the Supreme Court's decisions about the right to the assistance of counsel, certain conclusions

emerge. First, as established in *Middendorf v. Henry, supra,* an accused has no right to counsel in a summary court-martial—whether or not confinement is imposable, or is imposed, for any offenses of which he is found guilty.[12] Since the greater includes the lesser, the same principle applies to Article 15 proceedings, regardless of whether confinement or correctional custody is part of the punishment imposable or imposed.

■ While it appears that counsel is often made available to a military accused to advise him about his rights in a pending trial by summary court-martial, it is not equally probable that he will be furnished defense counsel for the trial itself. The Code and the Manual only make provision for detailing defense counsel for general and special courts-martial.[13] *See* Article 27, UCMJ, 10 U.S.C. § 827; para. 6, Manual, *supra.* Likewise, although it is apparent that under existing service regulations and directives a serviceperson frequently is allowed the opportunity to consult with a lawyer before determining whether to accept nonjudicial punishment, the role of such counsel seems generally to be involved with advising the accused of the options available to him and their legal consequences, rather than with representing him at a hearing before his commander if he decides to accept nonjudicial punishment.[14]

11. The per curiam opinion is supported by several concurring opinions. Four of the five Justices who joined in the per curiam opinion apparently treated the first conviction as being constitutionally valid. The concurrence of Mr. Justice Blackmun relied on the view he had expressed in *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), that since the first conviction had been for an offense for which more than 6 months' confinement was imposable, even though it had not been imposed, the conviction was constitutionally defective because of failure to provide the defendant with counsel. Thus, it is unclear how Justice Blackmun would have voted if the initial conviction had been in a trial where, under his view, counsel need not be provided. Even so, the fact remains that in *Baldasar v. Illinois,* —— U.S. ——, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the Supreme Court refused to allow use for enhancement purposes of a criminal conviction that, according to *Scott,* had been constitutionally obtained.

12. In a civil court counsel need not be furnished to a defendant being tried for an offense for which confinement could be imposed, so long as it is not actually imposed. *Scott v. Illinois, supra.*

13. By objecting to trial by summary court-martial, the accused can compel trial by special or general court-martial so that, if the charges are not dismissed, he will have the assistance of a lawyer at the trial itself. *See* Article 20, Uniform Code of Military Justice, 10 U.S.C. § 820.

14. Army and Air Force regulations provide for an opportunity to "consult" with counsel. *See* nn. 23 and 24, *infra.* From the context it is unclear that the consultation could extend beyond advising the accused about the options available to him and suggesting information he should present to the commander for consideration. Also, it is unclear whether the lawyer consulted may also be a "representative" of the

Although under our reading of *Baldasar v. Illinois, supra,* there is nothing unconstitutional about a conviction resulting from a trial by summary court-martial in which counsel was not offered to the accused either to advise him before trial or to represent him at trial, a constitutional issue may exist if that conviction is used later to trigger the habitual offender provisions of section B of paragraph 127c of the Manual.[15] This is especially true since the sentence to a punitive discharge authorized under those provisions is equivalent to a sentence to a substantial period of confinement.[16]

Similarly, insofar as any constitutional right is concerned, nonjudicial punishment may be validly imposed although the accused has not been offered counsel to consult with him or to appear in his behalf

at a hearing before his commander; but if, at some future time, section B were to be amended so that prior nonjudicial punishments could be considered to increase the maximum punishment imposable, the permissibility of such use might be questionable in light of *Baldasar.*[17]

Unless he is "attached to or embarked in a vessel," an accused for whom nonjudicial punishment is proposed may demand trial by court-martial. Article 15(a), *supra.* If the case is then referred to a summary court-martial, the accused has the same right to object to trial by summary court-martial that is possessed by someone whose case was referred in the first instance for trial by summary court-martial.[18] Article 20, UCMJ, 10 U.S.C. § 820. Thus, except for a service member "attached to or embarked in a vessel" and on whom nonju-

---

accused at any subsequent hearing before the commander. In a Report to the Secretary of Defense, the General Accounting Office recommends that "the Manual for Courts-Martial" be amended to "[s]pecify the service member's right to consult with independent counsel, and define [that term] and [specify] the extent of advice that will be provided service members." GAO Report to the Secretary of Defense, *Better Administration of the Military's Article 15 Punishments for Minor Offenses Is Needed,* September 2, 1980, P. vi.

**15.** The pertinent part of section B provides as follows:

*Permissible additional punishments.* If an accused is found guilty of an offense or offenses for none of which dishonorable discharge is authorized, proof of three or more previous convictions adjudged by a court during the year next preceding the commission of any offense of which the accused stands convicted will authorize dishonorable discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than one year, confinement at hard labor for one year. In computing the one-year period preceding the commission of any offense, periods of unauthorized absence as shown by the findings in the case or by the evidence of previous convictions should be excluded. See 75b (2) as to further limitations on consideration of previous convictions.

If an accused is found guilty of an offense or offenses for none of which dishonorable or bad-conduct discharge is authorized, proof of two or more previous convictions adjudged by a court during the three years next preceding the commission of any offense of

which the accused stands convicted will authorize bad-conduct discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three months. See 15b concerning the limitations on the power of special courts-martial to adjudge a bad-conduct discharge and forfeitures and 75b (2) for limitations on consideration of previous convictions.

The records of trial which have reached this Court do not suggest frequent invocation of these provisions.

**16.** *United States v. Brown,* 13 U.S.C.M.A. 333, 32 C.M.R. 333 (1962); *United States v. Prow,* 13 U.S.C.M.A. 63, 32 C.M.R. 63 (1962); *United States v. Smith,* 12 U.S.C.M.A. 595, 31 C.M.R. 181 (1961).

**17.** Mr. Justice Blackmun, whose vote was decisive in *Baldasar, see* n. 11, *supra,* concurred in *Middendorf v. Henry, supra,* which held that counsel was not constitutionally required in a summary court-martial. Thus, he could readily distinguish *Baldasar* from a case where the record of a prior summary court-martial conviction or nonjudicial punishment in which the accused had no counsel was used to enhance punishment.

**18.** Originally the Uniform Code gave no right to object to trial by summary court-martial if an accused had been offered and had refused nonjudicial punishment. However, Article 20 was later amended so that in every instance an accused may object to trial by summary court-martial.

dicial punishment is imposed, an accused has a means to assure that, unless the charges are dismissed, he will be tried by a court-martial—general or special—wherein counsel will be furnished to him.

The argument has been made that, since an accused has a means of having his case tried by a court-martial wherein he will be provided counsel, he waives any right to counsel by not utilizing the means which have been made available to him for obtaining counsel. In *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), the Supreme Court by a five-to-four vote upheld a somewhat similar contention in ruling that the State's two-tier system of courts did not violate the defendant's right to a jury trial. *Cf. Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). However, *Ludwig* involved trial by jury and that right has sometimes been treated differently from the right to counsel. Thus, counsel must be provided if the sentence includes even one day's confinement, *Argersinger v. Hamlin, supra*, but trial by jury is required only when the maximum punishment imposable exceeds six months. *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Furthermore, the assistance of counsel is often essential in informing an accused person about his other rights and their significance.

 In the military context, a refusal of nonjudicial punishment or summary court-martial and an ensuing referral of charges to a general or special court-martial may increase dramatically the maximum punishment to which the accused is subject. Under these circumstances the acceptance of nonjudicial punishment or of trial by sum-

mary court-martial cannot be equated with a knowing and intelligent waiver of counsel by an accused. On the other hand, insofar as the right to counsel is concerned, it would appear from a reading of the various opinions in *Baldasar* that if a defendant validly waived his right to counsel, then his conviction would be treated in the same manner as if he had been represented by counsel at his trial.[19]

In *Burgett v. Texas, supra*, the Supreme Court refused to allow impeachment of a criminal defendant testifying in his own behalf by proof of a prior conviction that had been obtained in violation of his constitutional right to the assistance of counsel. Since there is no constitutional right to counsel in a trial by summary court-martial, impeachment of an accused's testimony by evidence that he had been without counsel and had been convicted by summary court-martial of an offense involving moral turpitude, *see* para. 153*b*(2)(b), Manual, *supra*, would not present the same constitutional violation condemned in *Burgett*. However, in various cases on the right to counsel, the Supreme Court has emphasized its importance in assuring the accuracy of the fact-finding process; so there remains unanswered the question whether a summary court-martial conviction obtained without the presence of counsel for the accused is reliable enough to allow its use for impeachment purposes.

 In introducing evidence of good character to help create reasonable doubt as to his guilt, an accused may testify, or offer evidence, that he has never been convicted by court-martial. We infer from *Lewis v. United States, supra*, that until duly set

---

19. *Baldasar* does not address the specific point of whether a conviction can be used if it results from the trial of a non-indigent defendant who refuses to hire a lawyer or of an indigent defendant who intelligently and knowingly waives the right to have appointed counsel for the trial of his case. However, in these instances it would appear from a reading of the opinions in *Baldasar* that, while there still exists the unreliability which results from a trial

where the defendant has no counsel, *Baldasar* does not prevent use of the conviction to increase the punishment imposable on the defendant. To this extent any objection to unreliability when the conviction is used later to enhance subsequent punishment can be waived. *Cf. Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (upholding a defendant's right to waive assistance of counsel and to represent himself).

aside in some manner,[20] a conviction by summary court-martial cannot be treated as a nonentity, whatever its infirmities due to failure to provide the accused with counsel. Therefore, it may be introduced in evidence to refute the accused's claim that he has never been convicted.

## IV

■ The previous discussion has concerned the extent to which certain uses of a record of nonjudicial punishment or a summary court-martial conviction are affected by failure to provide the accused with counsel. However, even if an accused retained or was provided counsel in connection with the earlier proceeding, the record of nonjudicial punishment, or the summary court-martial conviction that resulted therefrom, may be subject to limitations on its use.

In *Middendorf v. Henry, supra*, the Supreme Court considered a trial by summary court-martial as something other than a "criminal prosecution," as that term is used in the Sixth Amendment. In justifying this view, Mr. Justice Rehnquist pointed out:

Finally, a summary court-martial is procedurally quite different from a criminal trial. In the first place, it is not an adversary proceeding. Yet the adversary nature of civilian criminal proceedings is one of the touchstones of the Sixth Amendment's right to counsel which we extended to petty offenses in *Argersinger v. Hamlin [supra]*.

\* \* \* \* \* \*

In short, presence of counsel will turn a brief, informal hearing which may be quickly convened and rapidly concluded into an attenuated proceeding which consumes the resources of the military to a degree which Congress could properly have felt to be beyond what is warranted by the relative insignificance of the offenses being tried. Such a lengthy proceeding is a particular burden to the Armed Forces because virtually all the participants, including the defendant and his counsel, are members of the military

whose time may be better spent than in possibly protracted disputes over the imposition of discipline.

425 U.S. at 40–41, 45–46, 96 S.Ct. at 1290 & 92–93 (footnotes omitted).

The informal, non-adversary proceeding which Mr. Justice Rehnquist describes seems quite different from the criminal proceedings which result in the convictions customarily used to trigger recidivist statutes or to impeach the credibility of a witness. We are not aware of any Supreme Court decision that enhancement of punishment under a recidivist statute or impeachment of a witness is permitted only when a prior conviction that is used was obtained in a proceeding that qualifies as a "criminal prosecution" for purposes of the Sixth Amendment. Even so, we are concerned about the constitutionality of using for this purpose convictions which were obtained in informal, non-adversary proceedings that fall outside the purview of the Sixth Amendment.

■ When a prior conviction is received in evidence, the parties have no opportunity to cross-examine the trier of fact who returned the finding of guilt as to the basis of his opinion that the defendant was guilty. That opinion is predicated on the testimony of witnesses who typically will not be subject to cross-examination at the trial where the prior conviction is being received. When that opinion of guilt was formed in a proceeding so informal that it does not constitute a "criminal prosecution" for purposes of the Sixth Amendment, its receipt in evidence to enhance the maximum punishment imposable or to impeach a witness' credibility seems questionable on due process grounds.

Of course, if the Manual for Courts-Martial sought to authorize the use of prior nonjudicial punishments to enhance the maximum punishment imposable in a trial by court-martial or to impeach a witness' credibility, the same reasoning would apply

---

20. Among the possibilities of relief are an application to the Judge Advocate General under Article 69, UCMJ, 10 U.S.C. § 869, or an application to the Board for Correction of Military Records. 10 U.S.C. § 1552.

—indeed, *a fortiori*, since the safeguards of nonjudicial punishment are less than those accorded an accused in a summary court-martial.[21]

## V

In the case at hand, the questioned record of nonjudicial punishment was not used to impeach a witness or to increase the maximum punishment to which appellant would be subject. Instead, pursuant to paragraph 75d of the Manual for Courts-Martial, the record of nonjudicial punishment was offered in evidence as personnel records "which reflect the past conduct and performance of the accused." Even so, it tended—and undoubtedly was intended by trial counsel—to induce imposition of a more severe sentence than might have been imposed in its absence. In *Tucker* the Supreme Court ruled that a defendant was entitled to relief on appeal when the trial judge in sentencing had obviously given great weight to prior convictions obtained in violation of Tucker's right to counsel, as established in *Gideon v. Wainwright, supra.* However, the nonjudicial punishments which were received in evidence in the case at hand had been constitutionally obtained, as *Middendorf v. Henry, supra*, made clear; so *Tucker* is not directly on point.

The prior conviction involved in *Baldasar* —although constitutionally obtained, *Scott v. Illinois, supra* —was used to increase the maximum punishment that could be imposed, rather than to guide the sentencing judge in determining what sentence should be imposed within the limits of a maximum punishment that had been established without regard to prior convictions. Thus, *Baldasar* also is not directly on point here.

In determining whether a conviction or nonjudicial punishment which does not result from a "criminal prosecution"—

as that term is used in the Sixth Amendment—can be properly considered in sentencing, we recall that restrictions on the admissibility of evidence have generally been relaxed for purposes of sentencing after a finding of guilt has been returned. The premise has been that the sentencing authority should receive full information concerning the accused's life and characteristics in order to arrive at a sentence which will be appropriate in light of the purposes for which a sentence is imposed. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

Towards this end Congress has enacted 18 U.S.C. § 3577, which states:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Moreover, Fed.R.Crim.P. 32 calls for a pre-sentence report which

shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

Defendant and his counsel will not see some contents of the report—namely,

any recommendation as to sentence, . . . diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might re-

---

21. The United States Court of Claims recently ruled in *Cappella v. United States*, 624 F.2d 976, 980 (1980), that a former Navy petty officer was not denied his Sixth Amendment right to cross-examine adverse witnesses at his Article 15 hearing since the Sixth Amendment applies only to "criminal prosecutions." As the Court observed:

The Article 15 hearing is an informal administrative proceeding for the imposition of minor punishment for minor offenses. It would be inconsistent with the basic concept of that proceeding to introduce into it the kind of formalism that adversarial cross-examination of witnesses would produce.

sult in harm, physical or otherwise, to the defendant or other persons.

Fed.R.Crim.P. 32(c)(3)(A).

The broad discretion allowed a Federal District Judge in the sources of information he uses in sentencing accords with *Williams v. New York, supra.* There the trial judge sentenced defendant to death, even though the jury had recommended only life imprisonment. In fixing the sentence, the judge admittedly had relied on information in a presentence report which reflected unfavorably on the defendant's past life. This reliance was permissible under a then prevailing New York "policy." The Supreme Court rejected Williams' claim that the judge violated his right to due process by using information received from individuals whom defendant had not been allowed to cross-examine. In the Court's view, evidentiary rules "fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged" have little applicability to the information utilized in the sentencing process. *Id.* at 247, 69 S.Ct. at 1083. Moreover, courts in this country and in England have historically granted a sentencing judge "wide discretion in the sources and types of evidence used [by] him in determining the kind and extent of punishment to be imposed." *Id.* at 246, 69 S.Ct. at 1082, 93 L.Ed. at 1341. The Supreme Court emphasized that this approach conforms with "modern concepts individualizing punishment" and with the widely adopted view "that the punishment should fit the offender and not merely the crime." *Id.* at 247, 69 S.Ct. at 1083.

Subsequent to the *Williams* decision and adoption of Fed.R.Crim.P. 32, the scope of a sentencing judge's review of a defendant's background has seemed almost unlimited. As enunciated in *United States v. Tucker, supra,* 404 U.S. at 446–47, 92 S.Ct. at 591:

It is surely true, as the Government asserts, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appro-priately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. *United States v. Trigg,* 7 Cir., 392 F.2d 860, 864; *Davis v. United States,* 5 Cir., 376 F.2d 535, 538; *Cross v. United States,* [D.C.Cir.] 354 F.2d 512, 514; *United States v. Doyle,* 2 Cir., 348 F.2d 715, 721; *United States v. Magliano,* 4 Cir., 336 F.2d 817, 822; Fed.Rule Crim.Proc. 32(a)(2). See *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337; *North Carolina v. Pearce,* 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656, 668. The Government is also on solid ground in asserting that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review. *Gore v. United States,* 357 U.S. 386, 393, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405, 1410. Cf. *Yates v. United States,* 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed.2d 837.

This general proposition was recently reaffirmed in *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), where the defendant challenged his sentence because the judge had viewed his defense as a "complete fabrication without the slightest merit whatsoever," *id.* at 44, 98 S.Ct. at 2613, and had stated that it was proper for him to consider this fact in sentencing. Observing that a judge in determining a sentence may consider an almost infinite array of information and materials, even including the judge's own perceptions of the defendant while on the witness stand, the Court rejected the defendant's challenge and stated:

Thus, we have acknowledged that a sentencing authority may legitimately consider the evidence heard during trial, as well as the demeanor of the accused. *Chaffin v. Stynchcombe,* 412 U.S. 17, 32, [93 S.Ct. 1977, 1985, 36 L.Ed.2d 714] (1973). More to the point presented in this case, one serious study has concluded that the trial judge's "opportunity to observe the defendant, particularly if he chose to take the stand in his defense, can often provide useful insights into an ap-

propriate disposition." ABA, [Project on] Standards Relating [for Criminal Justice,] to Sentencing Alternatives and Procedures § 5.1, p. 232 (App. Draft 1968).

A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing.

*Id.* at 50, 98 S.Ct. at 2616.

The lower Federal courts have gone even further in approving the types of information and matters that may be considered in determining a sentence. Thus, a trial judge may consider criminal activity in which the defendant was involved and which occurred subsequent to his trial. *United States v. Eberhardt*, 417 F.2d 1009 (4th Cir. 1969), *cert. denied sub nom. Berrigan v. United States*, 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970). Even though a pending indictment reflects only an opinion as to the defendant's guilt which has been reached by a majority of grand jurors on the basis of testimony received in private from witnesses not subject to cross-examination, it may be considered by the sentencing judge. *United States v. Metz* (Appeal of Davenport), 470 F.2d 1140 (3rd Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973). In other cases, a sentence has not been overturned although the judge considered prior criminal activity for which defendant had never been tried, *Horowitz v. Henderson*, 514 F.2d 740 (5th Cir. 1975); evidence admitted during a trial with respect to counts of which the defendant was acquitted, *United States v. Sweig*, 454 F.2d 181 (2d Cir. 1972); and even evidence illegally seized, which was subject to suppression on Fourth Amendment grounds, *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971).

In *Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), the Supreme Court, explaining why a trial judge should not look at a presentence report until guilt has been determined, stated:

Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. . . . Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular character and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so.

*Id.* at 492, 89 S.Ct. at 1136.

In *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)—which arose prior to the Supreme Court's decision in *Gideon* that an indigent defendant must be offered counsel in a State felony trial—the Court considered a claimed denial of due process because, in the absence of counsel, defendant had been taken advantage of in sentencing. At his original trial, Townsend had pleaded guilty and then, in connection with sentencing, the trial judge had asked him about earlier trials on the other charges. However, in three of the cases mentioned by the sentencing judge, Townsend had been absolved. In reversing, the Supreme Court noted:

But it savors of foul play or of carelessness when we find from the record that, on two other of the charges which the court recited against the defendant, he had also been found not guilty. . . . We are not at liberty to assume that items given such emphasis by the sentencing court, did not influence the sentence which the prisoner is now serving.

We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false as-

sumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.

. . . . .

It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

*Id.* at 740–41, 68 S.Ct. at 1255.

In granting relief because a sentencing "judge was confused, if not altogether mistaken, about [defendant's] prior criminal record," the Court of Appeals for the Second Circuit relied on *Townsend v. Burke, supra,* for the proposition that:

Misinformation or misunderstanding that is materially untrue regarding a prior .criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process.

*United States v. Malcolm,* 432 F.2d 809, 816 (2d Cir. 1970). However, the Court did not dispute the principle established in *Williams v. New York, supra,* that

a sentencing judge is not so narrowly restricted in imposing sentence that he cannot predicate sentence on habitual misconduct, whether or not it resulted in convictions. He may exercise a wide discretion in the sources and types of information used to assist him in determining

an appropriate, just and enlightened sentence.

*Id.* at 816.

From these precedents we observe that a sentencing judge's discretion is not absolute. Therefore, if his sentence demonstrably rests in substantial part on misinformation or misunderstanding, it may be set aside and the accused resentenced. However, as we held almost a decade ago in *United States v. Johnson,* 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970), the records of nonjudicial punishment clearly fall within the wide ambit of the sources of information that may be considered by a judge in sentencing—especially since the accused has full opportunity to question the record and to explain or deny the conduct referred to therein.

A record of previous punishment— whether inflicted nonjudicially or pursuant to a court-martial—not only tends to show what the prior performance of the accused has been, but also indicates what rehabilitative measures have previously been applied. Of course, a sentencing authority is fully entitled to consider the success or lack of success of prior punishments in determining what sentence may be appropriate for any offense for which an accused is to be sentenced.

In many courts-martial the sentencing is done by the court members, rather than by a military judge. However, we believe that court members acting under proper instructions from a military judge, can limit their consideration of such records to their permissible purpose of assistance in the formulation of an appropriate sentence for the particular accused. If court members are to sentence, the military judge should, if defense counsel requests, explain specifically to the members that the records of nonjudicial punishment were admitted as indications of the accused's past conduct and performance in order to assist the members in arriving at an individualized sentence appropriate to the particular accused. *Cf. United States v. Lania,* 9 M.J. 100 (C.M.A. 1980).[22]

**22.** Except when prior convictions are properly used under Section B of paragraph 127*c* of the Manual, *supra,* to enhance the maximum punishment imposable, their admission is for the same purpose.

## VI

Except for service members "attached to or embarked in a vessel," a right exists to decline nonjudicial punishment. In *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), we held, *inter alia*, that a record of nonjudicial punishment could not be admitted in evidence for sentencing purposes at a later trial unless the accused had been provided an opportunity for consultation with counsel, who could advise him about his right to decline nonjudicial punishment and his other rights. The decision did not deal specifically with records of nonjudicial punishment that had been imposed on persons who were "attached to or embarked in a vessel" and who therefore did not have a right to decline nonjudicial punishment in the first place. However, in view of the purpose of our requirement and the practical necessities which induced Congress to apply a special rule to such nautical persons as to their right to decline nonjudi-

cial punishment, we conclude that *Booker's* right to counsel requirement was not intended to apply in such instances.

Since there is no constitutional basis for the *Booker* requirement of opportunity to consult with counsel, it can best be justified as a practical means of implementing the right to decline nonjudicial punishment, which Congress granted accused persons— just as the Supreme Court utilized a right of consultation with counsel as a means of implementing, for persons subject to custodial interrogation, their Fifth Amendment privilege against self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Furthermore, service regulations now grant to many accused persons a right or an opportunity to consult counsel in connection with proposed nonjudicial punishment. *See e. g.*, para. 3–12, Army Regulation 27–10 (August 15, 1977); [23] para. 6k(1) and (2), Air

---

23. In relevant part, paragraph 3–12 of the Army Regulation provides:

*Procedures* a. The officer who intends to impose the punishment will notify the member concerned of that intent in writing in Part I, DA Form 2627 (para. 3–14a), and, if the right to demand trial by court-martial exists, will inform him of this right. The member concerned will be informed of his right to consult with counsel concerning the proposed disciplinary action and will be informed of the location of counsel whom he may consult. For the purposes of this paragraph the term "counsel" means the following: A judge advocate, a Department of the Army civilian attorney, or an officer who is a member of the bar of a Federal court or of the highest court of a State, provided that counsel within the last two categories are acting under the supervision of a Staff Judge Advocate.

\* \* \* \* \* \*

b. The officer who intends to impose the punishment will afford the member a reasonable period of time in which to consult with counsel or a person to speak in his behalf (including time off from duty if necessary) and to decide whether or not he will demand trial. He will direct the member to state either that he does, or does not, demand trial within that period.

(1) This period should be established after due consideration of such factors as the gravity of the offense, the time involved in physically transmitting the communication, and the availability of qualified counsel.

(2) Under ordinary circumstances 72 hours may be considered to be a reasonable time.

\* \* \* \* \* \*

d. If the member demands trial by court-martial as to any offense involved, further action will not be taken to impose nonjudicial punishment as to that offense. Whether, in this event, charges will be preferred against the member with a view to trial by court-martial, and the type of court-martial to which the case will be referred or recommended for referral are matters within the discretion of the appropriate commanding officer.

e. If a demand is not made prior to expiration of the specified interval, including any extension of time that may have been granted, the officer who is to impose punishment may proceed to do so. Punishment may also be imposed where the member refuses to complete and/or sign Part I—Initial Action, DA Form 2627, after having been afforded a reasonable time in which to make a decision. The member will be informed that punishment can be imposed where he or she fails to make a timely demand for trial or refuses to complete and/or sign Part 1—Initial Action, DA Form 2627. If punishment is imposed under such circumstances, the following entry should be made in Item 7, DA Form 2627, in addition to recording the punishment: "After having been fully advised of (his) (her) rights in accordance with paragraphs 3–12, 3–13 and 3–14, AR 27–10, member (did not

Force Regulation 111–9 (August 31, 1979).[24] Such directives stem in part from a Memorandum issued by Defense Secretary Laird on January 11, 1973, which concerned a Report of the Task Force on the Administration of Military Justice in the Armed Forces.[25] *See United States v. Harrell,* 5 M.J. 604, 607 (N.C.M.R. 1978). To the extent that military directives call for counsel to be made available to accused persons in connection with nonjudicial punishment, *Booker* helps enforce those directives.

DA Form 2627, the form involved in the instant case and in many others now under review by this Court,[26] has a specific reference to "the right to consult with a lawyer" and a place for insertion of the place where the lawyer is located and the time within which such consultation should take place.[27] A failure to complete the form by inserting place and time would indicate that the accused has not been supplied adequate information about the exercise of his right or opportunity to consult with an attorney. Because the form would then be incomplete on its face, it should be excluded from evidence in the sentencing procedure—unless, of course, there is other specific evidence that the accused was advised where he could consult with a lawyer and within what period he must do so. *Cf. United States v. Negrone,* 9 M.J. 171 (C.M.A. 1980).

■ The Manual for Courts-Martial provides in paragraph 75*b*(1) that where

the defense [counsel] objects to the data [as to the accused's service] as being inaccurate or incomplete in a specified material particular, . . . the military judge . . . shall determine the issue. Objections not asserted may be regarded as waived.

This subparagraph does not apply to records of nonjudicial punishment. Paragraph 75*d* contains similar provisions as to personnel records, which "include all those records made or maintained in accordance with departmental regulations which reflect the past conduct and performance of the accused." Under our decisions the failure to object to an official record because it was not completed as required by applicable regulations has not relieved the military judge of the duty to exclude the document. *United States v. Negrone, supra; United States v. Morales,* 1 M.J. 87 (C.M.A. 1975). Whatever changes, if any, may be made by the new Military Rules of Evidence, which took effect on September 1, 1980, we conclude that in trials before that date a Form 2627 lacking the information about access to counsel which is required on the face of the form is inadmissible despite defense failure to object, unless the Government independently establishes that such information was provided to the accused before he received nonjudicial punishment.

VII

■ In the case at bar, the form contained entries that the lawyer was located

---

demand trial prior to expiration of the time specified for a decision) (refused to (complete) (sign) (complete and sign) Part 1 of this form)."

24. Paragraph 6k(1) and (2) provides that:

k. In written proceedings, the offender is *allowed 3 duty days (72 hours) or longer on* written justification, to reply to the notification of intent to impose punishment (see Attachments 1 and 2, note 4).

(1) The offender will be encouraged to take full advantage of this time to consult with legal counsel, to decide whether to accept punishment and, if so, to prepare matters in defense, extenuation, or mitigation.

(2) If an offender does not state, within the allotted time, whether he or she will accept nonjudicial punishment, the commander may proceed with the punishment, noting the of-

fender's failure to respond in the letter imposing punishment (See Attachment 4).

25. A recent GAO Report would suggest that service personnel still have some of the same complaints which were reported to Secretary Laird by the Task Force and which helped give rise to his January 11, 1973, Memorandum. *See* GAO Report, Chapter 3, pp. 30–44 n. 14, *supra).*

26. Since the form purports to have been prescribed in 1973, it is probably another product of the Laird Memorandum of January 11, 1973.

27. On June 29, 1978, Mack was given 72 hours to consult with a lawyer; nonjudicial punishment *was imposed on July 7, 1978. See* appendix [A] which is attached to this opinion.

at "Bldg. 2845, Ft. Ord, California," and that Mack had 72 hours to decide what he wanted to do. The accused signed this document at a lower point on the form. In view of the presumption of regularity, *United States v. Moore*, 8 U.S.C.M.A. 116, 23 C.M.R. 340 (1957); *United States v. Masusock*, 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951), it may be presumed, for purposes of admissibility, that these entries were on the document when it was signed by the accused.

No evidence herein refutes the inference that, by reading the form which he signed, the appellant received the information recited on the form as to availability of counsel. Indeed, the inference is strengthened by the appearance of his initials at several places on the form. If, however, the accused had offered credible evidence which refuted this inference to the military judge's satisfaction, the judge would be required to rule on the admissibility of the form as if the entries had never been present. In that event, absent other evidence that the advice as to time and place for consulting an attorney had been given to the accused in some other way before his commander administered the nonjudicial punishment, the record of that punishment could not be received in evidence.[28]

DA Form 2627 does not contain a box which the accused can check to indicate whether he has consulted with an attorney and, if not, whether he has voluntarily waived the right of consultation to which the form itself refers. It would be preferable if the form provided a place for recording such information; and we have reviewed many records of trial containing forms which were similar but which provided a place for recording such data. Indeed,

the dissent suggests language which, if used in a form, would be helpful in reducing possibilities for later controversy about whether the accused consulted an attorney and, if not, whether he knowingly relinquished any right to do so.[29]

Nonetheless, prosecution exhibit 8 was admissible against appellant even though it contained no specific recital that the accused had consulted counsel or had specifically declined to do so. Indeed, if we were to require such a recital in order to establish that an accused had waived the right to consult counsel which he had been offered, how much detail would be necessary in that recital as a basis for demonstrating that his relinquishment of the right was "intelligent & competent"? *Johnson v. Zerbst, supra*, 304 U.S. at 465, 58 S.Ct. at 1023. Moreover, whatever the contents of a form, an accused might complain later that really he had not understood what document he was signing nor its full significance.

If pressed to the logical extreme, we could not be content with adding a recital of waiver to the language of a form signed by the accused. Instead, we would need to insist that a live witness be called to testify about the circumstances of the alleged waiver—just as a suspect's waiver of his *Miranda* right to have counsel during custodial interrogation is usually proved by a live witness, rather than by merely reciting in the preamble to a confession that he has waived counsel. And it has even been suggested that one cannot validly waive his right to counsel without being counseled by a lawyer; otherwise his waiver would not be knowing and intelligent.[30]

---

**28.** Under some circumstances, that independent evidence may be adduced from the accused himself. *United States v. Mathews, supra.*

**29.** Of course, if such a form is used, the blanks must be filled in or the omission explained otherwise, like other incomplete forms, it would be suspect and subject to objection. A signed statement by the accused that he does not desire to be counseled by an attorney—proposed in the dissent as part of a suggested form—would obviate any question as to what

has taken place if nonjudicial punishment is imposed within the time that the form purports to have allowed the accused for consulting a lawyer.

**30.** *Cf. Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion). Whatever may be the extent of the validity of this suggestion, *see Faretta v. California, supra*, 422 U.S. at 835–36, 95 S.Ct. at 2541, it does not apply to the waiver of counsel which is required before a confession may be obtained. *See North Carolina v. Butler*, 441 U.S. 369,

If an accused who is offered nonjudicial punishment possessed either a constitutional or a statutory right to counsel, it might be appropriate to adopt some such approach and to hold that, if he had not consulted counsel before receiving nonjudicial punishment, then no record of that punishment would be admissible, unless there were evidence (independent of that document) to establish that he had validly waived counsel. However, since no right to counsel in connection with nonjudicial punishment was conferred on accused persons by either the Constitution, see *Middendorf v. Henry, supra,* or the Congress, see Article 15, *supra,* we are unwilling to adopt any such burdensome rules. Indeed, if we were writing now on a completely clean slate, it might be suitable simply to overrule *United States v. Booker, supra,* as the Government has repeatedly requested and hold that, since an accused has neither a constitutional nor a statutory right to consult counsel or to be represented by counsel in connection with impending nonjudicial punishment, a record of nonjudicial punishment need contain no reference to consultation with counsel. However, at this point it seems unwise to turn back the clock. This is all the more true since consultation with counsel allows a better informed exercise of an accused's right to refuse nonjudicial punishment and also since the Department of Defense—apparently in response to various complaints—committed itself several years ago to a policy of providing an opportunity for accused persons to consult counsel in connection with proceedings under Article 15.

Accordingly, under our view an accused may properly object to admission of a record of prior nonjudicial punishment which does not recite that he was offered some opportunity to consult with counsel. Also, even if the form purports to have offered him an opportunity for such consul-

tation, the objection would be valid, if by credible evidence he persuades the trial judge that, despite the form's recital to the contrary, he was not offered such an opportunity or that, although he exerted every reasonable effort to see a lawyer before receiving nonjudicial punishment, he could not do so. Under such circumstances the purported offer of an opportunity to consult with counsel is a sham or is illusory and should be disregarded. Furthermore, even if a record of nonjudicial punishment has been properly admitted in evidence, an accused remains free to deny his guilt of the misconduct for which nonjudicial punishment was imposed or to offer whatever explanation for the offense he may choose.

## VIII

Article 20 of the Code provides, "No person with respect to whom summary courts-martial have jurisdiction may be brought to trial before a summary court-martial if he objects thereto." The Charge Sheet set forth in Appendix 5, Manual, *supra,* provides boxes wherein an accused checks whether he consents or objects to trial by summary court-martial and then signs his name. *Id.* at A5–4. Appendix 11 illustrates how this page of the charge sheet is filled in to constitute part of the Record of Trial by Summary Court-Martial. The 1951 Manual for Courts-Martial, United States, contained similar Appendices. App. 5, 11.

In connection with an accused's right under Article 15 to demand trial by court-martial, DA Form 2627 contemplates a check in either of two boxes to evidence whether trial by court-martial is demanded. Since Article 15 of the Code does not prescribe any specific means for advising an accused of his right to demand trial by court-martial or for evidencing whether he

99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), where a finding of waiver of the right to counsel was upheld even though the defendant declined to sign a waiver form; "said nothing when advised of his right to the assistance of a lawyer"; and "did [not] request counsel." *Id.* at 371, 99 S.Ct. at 1756. He had been thoroughly advised of his rights and stated that he understood

them. In fact the Court stated: "Even when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' . . ." *Id.* at 374–75, 99 S.Ct. at 1758.

has made such a demand, the Armed Services were left free to use any reasonable means for this purpose. We conclude that DA Form 2627 provides a reasonable and adequate means of evidencing and recording the accused's election.

■ In the case at hand, the block checked indicates that trial by court-martial was not demanded. If neither block had been checked, the form would be incomplete on its face and so not entitled to the presumption of regularity. *United States v. Negrone, supra.* Therefore, it could not be received unless credible evidence established that the accused had not demanded trial by court-martial. Likewise, if by credible evidence the accused persuaded the military judge that the box had not been checked before he received nonjudicial punishment, the record would be inadmissible unless it was established by independent evidence that the accused had not demanded trial by court-martial before the punishment was imposed.[31]

■ Article 15(e) grants an accused rights of appeal in connection with nonjudicial punishment. DA Form 2627 also contains boxes which are to be checked by an accused to indicate his choice with respect to an appeal. In light of the presumption of regularity, a checking of one of the boxes followed by the signature of the accused is sufficient to establish whether the accused chose to appeal. While not essential, an initialing of the checked boxes is desirable in that it helps identify who did check the boxes.

■ In line with our earlier analysis, a failure to check the boxes indicates that the requirements of Article 15 have not been complied with. In that event, absent independent evidence whether the accused elected to appeal, the DA Form 2627 would be inadmissible because of its incomplete-

ness. *Cf. United States v. Negrone, supra.*[32] Furthermore, if by credible evidence the accused persuaded the military judge that he had not checked one of the boxes, then the form would be inadmissible—unless by independent evidence it was established what election the accused had made.

■ If an accused checks a box indicating that he appeals, then the record of nonjudicial punishment will be incomplete unless the appropriate blocks are checked by those entrusted with taking appellate action. Thus, if certain punishments have been imposed, it will be necessary for the form to show the appeal was referred to a judge advocate as required by Article 15(e). Unless any omissions on Form 2627 are accounted for by independent evidence, it cannot be received for sentencing purposes. *United States v. Negrone, supra.*

■ To avoid any possible misunderstanding, we point out that an accused cannot render a Form 2627 inadmissible by refusing to check the boxes or to sign his name thereon. If the applicable service regulation provides that the commander administering the nonjudicial punishment—or some other designated person—may explain on the form itself that the accused declined to sign the form or to fill in the boxes,[33] such an explanation will suffice to account for the omissions on the form. Otherwise, that explanation may be provided by independent evidence.

## IX

In line with the preceding discussion, we hold that in the case at hand the record of nonjudicial punishment offered by the Government was admissible. Therefore, the decision of the Court of Military Review is affirmed.

Appendix to follow.

---

**31.** Here, too, under some circumstances, that independent evidence may be forthcoming from the accused himself. *United States v. Mathews, supra.*

**32.** If the accused had not checked the block indicating that he chose to appeal, but subse-

quent entries on the form made it clear that he had appealed, the omission would not be fatal to admissibility.

**33.** *See, e. g.,* the regulations quoted in nn. 23 and 24, *supra.*

# APPENDIX A

**RECORD OF PROCEEDINGS UNDER ARTICLE 15, UCMJ** 1/ 78-175
For use of this form, see AR 27-10, the proponent agency is Office of The Judge Advocate General.

| Name and grade | SSN | Unit | Pay (Basic & Sea/For....) |
|---|---|---|---|
| MACK, John M. SP4 | 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 | Engineer Co., ESC, USACDEC | 478.5 |

**PART I - INITIAL ACTION**

1. I am considering whether you should be punished under Article 15, UCMJ, for the following misconduct: 2/
In that you, at Fort Hunter Liggett, California, on or about 0510 hours, 22 June 1978, were derelict in the performance of your duties in that you willfully failed to properly walk your guard post, ESC Parking Lot Guard Post #2, as it was your duty to do. This is in violation of Article 92, Uniform Code of Military Justice.

2. You have several rights under this Article 15 procedure. First, I want you to understand that I have not yet made a decision whether or not you will be punished, and I will not impose any punishment unless I am convinced beyond a reasonable doubt that you committed the offense. You may ordinarily have a public hearing before me. You may bring a spokesman on your behalf. You may present witnesses and other evidence to show why you shouldn't be punished at all (matters in defense) or why punishment should be very light (matters in extenuation and mitigation). I shall consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. You are not required to make any statements at all, but if you do, they may be used against you in this Article 15 or in a trial by court-martial. If you do not want me to dispose of this report of misconduct under Article 15 you have the right to demand trial by court-martial instead. 3/ In deciding what you want to do you have the right to consult with a lawyer located at Bldg 2845, Ft Ord, CA You now have 72 hours to decide what you want to do. 4/

| Date and time | Name, grade and organization of commander | Signature |
|---|---|---|
| 2 June 1978 | KENNETH H. CIOW, CPT, EN, Commanding | |

3. Trial by court-martial ☐ is ☒ is not demanded. 3/ 4. A spokesman ☐ will ☒ will not accompany me. 5/
5. Matters in defense and/or extenuation: ☐ are not presented ☐ are attached hereto ☒ will presented in person. 6/
6. An open hearing ☐ is ☒ is not requested. 6/

| Date | Name and grade of service member | Signature |
|---|---|---|
| 7/11/78 | JOHN M. MACK, SP4 | |

7. I have considered all matters presented in defense and/or extenuation and mitigation. 6/ The following punishment(s) (is) (are) imposed: 7/

1. Reduction to the grade of Private First Class (E-3).
2. Forfeiture of $111.00 (Suspended until 7 October 1978).
3. Restriction to the company area, place of duty, place of worship, and the consolidated dining facility for a period of seven (7) days (Suspended until 7 October 1978).
4. To perform extra duty for a period of seven (7) days (Suspended until 7 October 1978)

8. You are advised of your right to appeal this punishment within 3 days to Cdr, ESC, USACDEC the next superior authority.

| Date | Name, grade and organization of commander | Signature |
|---|---|---|
| 7 July 78 | KENNETH H. CIOW, CPT, EN, Commanding | |

**PART II - APPELLATE ACTION**

9. ☒ I do not appeal. ☐ I appeal and do not submit matters for consideration by the next superior authority. 8/
☐ I appeal and submit the matter attached hereto for consideration by the next superior authority. 8/

| Date | Name and grade of service member | Signature |
|---|---|---|
| 11 July 78 | JOHN M. MACK, PFC | |

10. I have considered the appeal and it is my opinion that: 9/

| Date | Name and grade of judge advocate | Signature of judge advocate |
|---|---|---|
| | | |

11. After consideration of all matters presented in appeal, the appeal is ☐ Denied ☐ Granted ☐ Granted in part as follows: 9/

| Date | Name, grade and position | Signature |
|---|---|---|
| | | |

12. I have seen the action taken on my appeal.

| Date | Name and grade of service member | Signature |
|---|---|---|
| | | |

**PART III - ATTACHMENTS AND/OR COMMENTS** 10/ 11/

**DA FORM 2627** 1 NOV 73 Edition of 1 Mar 68 is obsolete. Replaces DA Form 2627-1, 1 Mar 68, and DA Form 2627-2, 1 Mar 65, which are obsolete.

COOK, Judge (concurring in part and dissenting in part):

I agree with the principal opinion that a completed DA Form 2627 is admissible into evidence during the sentencing phase of a court-martial and that no additional evidence or inquiry by the military judge is required to establish its admissibility. However, in *United States v. Mathews*, 6 M.J. 357, 359 (C.M.A.1979), and *United States v. Booker*, 5 M.J. 238, 244 (C.M.A. 1977), I expressed my disagreement with the majority view as to the impact of *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), upon summary courts-martial and disciplinary proceedings under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815. Today, the principal opinion, citing *Baldasar v. Illinois*, —— U.S. ——, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), would further restrict the use of summary court-martial records. I dissent from that portion of the principal opinion [1] for the following reasons:

I

*Baldasar* did not discuss the question of whether the unique aspects of the military community necessitated a different holding for the use of the record of a summary court-martial conviction during a subsequent court-martial. The Supreme Court, in *Middendorf v. Henry, supra*, relied on these differences in holding that *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and the Sixth Amendment did not require counsel for summary courts-martial; the Court also rejected a claim that the Fifth Amendment required the assistance of counsel. These differences impel me to conclude that *Baldasar* is inapplicable to the use of a record of a summary court-martial conviction. Indeed, Mr. Justice Marshall observed in *Baldasar*, in rejecting an argument that *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), allowed the admissibility of the previous uncounseled conviction for pur-

poses of escalating the period of confinement, that:

This logic is fallacious for the simple reason that petitioner's prior conviction was not valid for all purposes. Specifically, under the rule of *Scott* and *Argersinger*, it was invalid for the purpose of depriving petitioner of his liberty.

100 S.Ct. at 1587.

Obviously, *Middendorf* held that an uncounseled summary court-martial conviction was valid for the purpose of confinement and the rationale of Mr. Justice Marshall is inapplicable to the use of a summary court-martial conviction. Furthermore, the collateral consequences of a summary court-martial conviction did not go unnoticed by the Supreme Court in *Middendorf*. Mr. Justice Marshall noted, in his dissent, that the enhancement provision of paragraph 127c includes summary court-martial convictions. Mr. Justice Rehnquist, speaking for a majority of the Court, rejected his argument that such consequences required a different result. Accordingly, I would hold that *Baldasar* did not modify *Middendorf*.

II

Even assuming the applicability of *Baldasar* to courts-martial, the use of summary court-martial convictions would not be precluded in all cases. In *Baldasar*, four justices expressed the view that previous convictions that had been tried without according an accused the right to counsel could not be used to escalate the punishment for a subsequent criminal offense, even though the convictions had been properly adjudged under *Scott v. Illinois, supra*. Four justices dissented. Mr. Justice Blackmun concurred separately, expressing the view that his "bright line" approach set forth in *Scott v. Illinois, supra* at 389–90, 99 S.Ct. at 1170–71, should be applied. This approach would require the rejection of a previous conviction for enhancement purposes where the accused had not been accorded a right to

---

1. The author judge also offers an advisory opinion as to the potential use of records of Article 15 proceedings for impeachment and enhancement purposes. However, I decline to join this advisory opinion as these records are not presently authorized for such purposes.

counsel if the offense was punishable by more than 6 months imprisonment or a term of imprisonment was actually imposed. What if an accused was convicted by summary court-martial and confinement was not imposed? Mr. Justice Blackmun's approach would warrant the admissibility of such a previous conviction because a summary court-martial is limited to a term of confinement of 1 month and it would, therefore, be valid under his "bright line" test. Article 20, UCMJ, 10 U.S.C. § 820. Thus, five justices of the Supreme Court would permit, for the purpose of escalating the maximum imposable punishment, the use of a previous conviction where the accused was not represented by counsel, no confinement was imposed, and the maximum imposable confinement was no more than 6 months.

### III

Further, I note that *Baldasar* involved the escalation of confinement, which was the dividing point for the right to counsel as announced in *Scott v. Illinois, supra*. The enhancement clause in Section B of paragraph 127c, Manual, *supra*, also permits the imposition of a punitive discharge as a result of previous convictions where such a penalty is not otherwise authorized. Obviously, in *Baldasar* the Supreme Court had no occasion to address an escalation of this nature and, as I read *Argersinger* and *Scott*, the right to counsel is dependent upon the imposition of confinement. That factor compels me to conclude that, even assuming the applicability of *Baldasar* to courts-martial, the case does not preclude the imposition of a punitive discharge on the basis of previous, uncounseled summary court-martial convictions.

### IV

Judge Fletcher, writing for a majority of the Court in *Booker*, held that records of summary court-martial convictions "may be used for the purpose of enhancement of the punishment since the basic concepts and protections of *Argersinger* will have been met" where an accused was represented by counsel or waived such right. *Id.* at 243. He did not, however, view an election to be tried by summary court-martial as a waiver of the right to counsel. I disagreed with the import of such an election because Mr. Justice Rehnquist, speaking for a majority of the Court in *Middendorf v. Henry, supra*, 425 U.S. at 47, 96 S.Ct. at 1293 (footnote omitted), observed that an accused may obtain a "counseled proceeding" by refusing "trial by summary court-martial and proceed[ing] to trial by special or general court-martial at which he may have counsel." *Compare* Article 20, *supra, with* Article 38(b), UCMJ, 10 U.S.C. § 838(b). Thus, in my view, this "bypass" is sufficient to constitute a waiver of the right to counsel. The principal opinion finds fault with this analysis because an accused would be subject to a more severe penalty. Again, I refer to Mr. Justice Rehnquist's opinion in *Middendorf*, where he noted this factor and found *no constitutional infirmity*.

Nevertheless, even the majority in *Booker* recognized that there could be a valid waiver where counsel was actually offered, but was rejected for a summary court-martial proceeding. The principal opinion in the present case would not permit the use of a previous summary court-martial conviction for enhancement of the sentence, even if the accused had waived the right to counsel or had actually been represented by counsel. This holding is inconsistent with *Baldasar*, because the principal opinion observed that there had been no waiver of counsel during the previous criminal proceeding. *Argersinger* was also predicated upon the absence of a waiver of the right to counsel. Thus, the Supreme Court decisions relied upon in the principal opinion recognize that there can be a valid waiver of the right to counsel. I cannot agree that a summary court-martial proceeding is distinguishable on the basis that it is informal in nature and, therefore, not sufficiently reliable under the due process clause of the Fifth Amendment. Mr. Justice Rehnquist observed in *Middendorf* that a summary court-martial ceases to be informal if defense counsel participates in the proceeding.

## V

The principal opinion in the present case also implies that *Baldasar* precludes the use of a summary court-martial conviction for impeachment purposes. This issue was not discussed in Mr. Justice Stewart's, nor in Mr. Justice Marshall's, nor in Mr. Justice Blackmun's concurring opinion. Mr. Justice Powell noted in his dissent:

> In addition, as the Illinois Appellate Court predicted, today's ruling will incite further litigation claiming that uncounseled misdemeanor convictions cannot be used to impeach a defendant's testimony, or that judges should not consider such convictions in later sentencing determinations. 52 Ill.App.3d 305, 310, 10 Ill.Dec. 71, 75, 367 N.E.2d 459, 463 (1977). Following today's pronouncement, there is no way to predict the outcome of any such claim.

100 S.Ct. at 1592. Thus, I fail to perceive that *Baldasar* precludes use of a summary court-martial conviction for impeachment purposes.

### Conclusion

The Supreme Court reminded us, during this past term of court, that the standards of constitutional law applicable in the civilian community are not *per se* applicable to the military community and some variations are required. *Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980). Accordingly, I dissent from that portion of the principal opinion that restricts the use of summary courts-martial convictions.

FLETCHER, Judge (dissenting):

I regret that I must write a prologue to my dissenting opinion, but believe it is essential to explain to those who read our opinions what specific legal question was presented to the Court; what is the resolution of the question by the majority, and wherein I disagree with their conclusion.[1]

In so doing, I would hope to be an architect laying out a plan that will give guidance to the future structure of the law and not just a practitioner of carpentry.[2]

1. *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), states the law concerning the admissibility of summary courts-martial records[3] into evidence.

2. *United States v. Mathews*, 6 M.J. 357 (C.M.A. 1979), makes the *Booker*, requirements applicable to the admissibility of Article 15 disciplinary records into evidence.[4]

3. The facts of this case fall under the law as set forth in *United States v. Mathews, supra.*

4. The majority now overrules *Mathews, supra*, as to the requirements necessary for the record of an Article 15 disciplinary action to be admissible.

5. All the verbiage that relates to the admissibility of summary courts-martial records is pure dicta.

6. Neither Chief Judge Everett or Judge Cook, obtained a second vote for their comments or conclusions as to the admissibility of summary courts-martial records.

7. The only majority opinions as to the law, for the admissibility of summary courts-martial records, is *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), and *United States v. Booker*, 5 M.J. 246 (C.M.A. 1978), therefore they are still the law.

The alleged error in appellant's case occurred during the sentencing portion of his court-martial in May of 1979. The military judge at this *post-Mathews* general court-martial considered for purposes of sentence aggravation the record of a *pre-Mathews* non-judicial punishment awarded in July 1978. The prosecution exhibit on its face, did not comply with the requirements of *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), as applied to records of non-judicial punishment in our decision in *United States v. Mathews, supra.*

---

1. See R. Leflar, *Appellate Judicial Opinions*, 1974.

2. *See* Crockett, *Decision Writing*, 48 A.B.A.J. 864 (1962).

3. Article 20, Uniform Code of Military Justice, 10 U.S.C. § 820.

4. Article 15, UCMJ, 10 U.S.C. § 815.

The clear mandate of *Mathews* is that, prior to the admission of these disciplinary records for purposes of sentence aggravation, the record must demonstrate:

1. "that the individual to be disciplined" was "told of his right to confer with . . counsel," *United States v. Booker, supra* at 243, concerning his procedural rights; and,

2. that there was a "written waiver establish[ing] a voluntary, knowing, and intelligent decision to forego removal to a criminal proceeding . . . with sufficient awareness of the relevant circumstances." *Id.* n. 20.

The exhibit in this case was defective because it did not demonstrate that the second requirement was met, namely, that the appellant validly waived his statutory right of removal prior to his decision to opt for disciplinary punishment under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815. *See United States v. Mathews, supra* at 358; *United States v. Booker, supra* at 243 n. 20.

Less than two years after the decision date of *Mathews*, the majority calls for a relaxation in the necessary evidence required to show compliance with the written waiver of removal requirement. This retreat is purportedly based on reason and convenience, though a more complete and express written waiver is considered preferable by Chief Judge Everett, who states:

> DA Form 2627 does not contain a box which the accused can check to indicate whether he has consulted with an attorney and, if not, whether he has voluntarily waived the right of consultation to which the form itself refers. It would be preferable if the form provided a place for recording such information; and we have reviewed many records of trial containing forms which were similar but which provided a place for recording such data. Indeed, the dissent suggests language which, if used in a form, would be helpful in reducing possibilities for later controversy about whether the accused

consulted an attorney and, if not, whether he knowingly relinquished any right to do so.[29]

[29] Of course, if such a form is used, the blanks must be filled in or the omission explained; otherwise, like other incomplete forms, it would be suspect and subject to objection. A signed statement by the accused that he does not desire to be counseled by an attorney—proposed in the dissent as part of a suggested form—would obviate any question as to what has taken place if nonjudicial punishment is imposed within the time that the form purports to have allowed the accused for consulting a lawyer.

9 M.J. 300, 322 (C.M.A. 1980). As acknowledged by the Chief Judge, many records of trial which have come before us at least reflect some effort by military authorities to adapt their forms to comply with the *Booker* and *Mathews* decisions and their progeny.[5] Accordingly, I see no justification in this case why the government's inactivity or its deliberate failure to promptly comply with *Mathews* need now be countenanced.

The Chief Judge in his opinion concurs with my thinking that the *Booker* and *Mathews* requirements may be quite simply shown. A prima facie case may be made for the admission of these disciplinary records by adding three simple lines to those already contained in DA Form 2627.

1. I do/do not desire to be counseled by an attorney as to my procedural rights.

_____
Signature

2. I talked with lawyer _____ on
_____.

_____
Signature

3. I understand my procedural rights as explained by lawyer _____.

_____
Signature

_____

These additional questions might easily be added to Part II of DA Form 2627, so as not to necessitate a great burden on the Government in completing existing paper work or in devising new forms.

---

5. *See United States v. Hayes*, No. 38,127, 9 M.J. 331 (C.M.A. 1980) (Appendix A of the majority opinion). I would note that the form

was prepared prior to *United States v. Mathews*, 6 M.J. 357 (C.M.A. 1979).

I believe that "[n]o rule of law truly exists except as it arises from the needs of experience. Nor should it survive except as it continues to supply a need discovered and discoverable by experience."[6] *United States v. Mathews, supra,* and *United States v. Booker, supra,* were born of a need, and that need continues to exist.[7]

**6.** Breitel, Review of *The Common Law Tradition—Deciding Appeals* by Karl N. Llewellyn, 61 Colum.L.Rev. 931, 934 (1961).

**7.** General Accounting Office, Report to the Secretary of Defense, *Better Administration of the Military's Article 15 Punishments for Minor Offenses is Needed,* September 2, 1980, at 40:

Many of the service members we interviewed did not consult with counsel before deciding whether to accept an article 15 because they were unaware of its availability and did not see the benefits to be derived from counsel. Other reasons included fear of reprisals, advice from superiors, and a desire to avoid a hassle. Depending on the service installation, legal services varied widely; availability and convenience differed; and the person giving the advice was not necessarily a legal officer. When legal services were used by service members in our sample, most were dissatisfied with the services received.

On the basis of our interviews, we believe service members may accept article 15 punishment when it is not in their best interests to do so. Advice to service members on the decision to accept or refuse an article 15 is sometimes misleading and may not be very informative. Because of the services' emphasis on the negative consequences of a court-martial, service members may be afraid to refuse an article 15. In addition, service members we interviewed often made this choice before it was necessary by law, thereby denying themselves the chance to consider all the informative available to them before punishment was imposed.