UNITED STATES, Appellee

v.

Danny R. KELLY, Fireman Apprentice
U.S. Navy, Appellant.

No. 95–0625.
Crim.App. No. 94 00169.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 28, 1996.

Decided Sept. 30, 1996.

For Appellant: *Major R.K. Stutzel,* USMC (argued); *Lieutenant John J. Luke,* JAGC, USNR.

For Appellee: *Lieutenant John R. Livingston, Jr.,* JAGC, USN (argued); *Colonel Charles Wm. Dorman,* USMC (on brief); *Colonel J. Composto.*

Amici Curiae Urging Reversal: *Colonel Stephen D. Smith* (argued)—For Defense Appellate Division, U.S. Army.

*Captain Richard D. Desmond* (argued); *Colonel Jay L. Cohen* (on brief); *Lieutenant Colonel Joseph L. Heimann*—For Appellate Defense Division, USAF.

*Eugene R. Fidell* (argued); *David P. Sheldon, Kevin J. Barry, John S. Jenkins, Steven A. Saltzburg,* and *Mary M. Cheh* (on brief)—For National Institute of Military Justice.

*Joseph A. Boveri* (Law Student) (argued); *Michael F. Noone, Jr.* and *Scott N. Flesch* (Law Student) (on brief)—For Catholic University of America Columbus School of Law, Military Law Students Association.

*Stephen J. Curran* (Law Student) (argued); *Steven H. Goldblatt* and *Lisa Levinthal* (Law Student) (on brief)—For Georgetown University Law Center Appellate Litigation Program.

*James H. Benson* (Law Student) (argued); *Ronald F. Wright* and *Carol B. Anderson* (on brief)—For Wake Forest University School of Law Center Clinical Appellate Program.

Amici Curiae Urging Affirmance: *Captain Theresa A. Gallagher* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Major Fred P. Taylor* (on brief)—For Government Appellate Division, U.S. Army.

*Major John H. Kongable* (argued); *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Jeffery T. Infelise*—For Appellate Government Division, USAF.

*Opinion*

EVERETT, Senior Judge:

This case comes to us on appellant's granted petition (43 MJ 172), *see* Art. 67(a)(3), Uniform Code of Military Justice, 10 USC § 867(a)(3) (1994), asking us to review the decision below in which a majority of the Court of Criminal Appeals, sitting *en banc,* were "of the view" that it no longer was bound by this Court's decision in *United States v. Booker,* 5 MJ 238 (1977), as modified by *United States v. Mack,* 9 MJ 300 (1980). 41 MJ 833, 844 (1995). The court below reached that conclusion after attempting to analyze the decisional bases of those

opinions and determining that a "change in circumstances warrant[ed] departure" from them. *Id.* at 841.

Now, after full consideration of the briefs and oral arguments of the parties and of *amici curiae,* we hold, first, that the lower court was not free to depart from this Court's precedent. *United States v. Allbery,* 44 MJ 226 (CMA1996). Further, after reconsidering *Mack* on our own initiative, we reaffirm its holding as articulated in the lead opinion there. Finally, we hold, consequently, that the military judge erred when he overruled defense counsel's objection to the record entry of appellant's earlier summary court-martial.

I

Pursuant to provident guilty pleas entered at a special court-martial at Naval Base Charleston, South Carolina, the military judge convicted appellant of unauthorized absence (2 specifications), *see* Art. 86, UCMJ, 10 USC § 886, and sentenced him to a bad-conduct discharge, confinement for 60 days, forfeiture of $250.00 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority approved these results, as did the Court of Criminal Appeals. 41 MJ 833.

During the presentencing hearing, trial counsel offered into evidence a service-record entry that indicated a prior summary court-martial where appellant had been reduced in grade and had forfeited pay because of four unauthorized absences and one missed movement of a ship. *See* RCM 1001(a)(1)(A)(ii) and (iii), and (b)(2) and (3), Manual for Courts–Martial, United States (1995 ed.). Defense counsel objected on the ground that there was "no evidence that the accused at that time was advised of his right to either consult with counsel or to be represented by counsel at a summary court-martial, and the court should not consider that as a prior conviction unless there is some evidence regarding advice of counsel." *See United States v. Booker, supra.* Without comment, however, the military judge overruled the objection and admitted the evidence.

In the Court of Criminal Appeals, appellant complained that the military judge had erred to his substantial prejudice when he admitted the challenged evidence. The subsequent majority opinion of that court explains its approach at that point:

If *Booker* retains its vitality, the military judge erred. However, the United States Supreme Court has recently held in *Nichols v. United States,* that uncounselled, yet constitutionally firm, prior misdemeanor convictions may be used to enhance sentences in federal criminal trials and a cautionary advisement at the time of the prior conviction is not required. Therefore, we specified the following issue for briefing by the parties:

WHETHER THE REQUIREMENTS OF *United States v. Booker,* 5 MJ 238 (CMA 1977), CONTINUE TO APPLY IN TRIALS BY COURT–MARTIAL IN LIGHT OF *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994)?

We also ordered the case be considered by this Court sitting as a whole in order to secure uniformity of decision and because the proceedings involved a question of exceptional importance. Courts of Military Review Rules of Practice and Procedure, Rule 17(a), 22 MJ CXXXIII.

41 MJ at 835.

Approaching the answer to its specified issue with due caution, the court below began with a primer on the military justice system's court-martial structure and operation, followed by a summary of the opinions of this Court and of the Supreme Court of the United States that had formed the predicate of the *Booker* decision. Then, observing that, "[s]ince *Booker* was decided, most appellate activity has been devoted to limiting its application," 41 MJ at 838, the court below moved to a *seriatim* summary of relevant post-*Booker* decisions by this Court.

Upon this basis—even while acknowledging the applicability of "*stare decisis* ... in cases reviewed by military courts of criminal appeals" and the binding nature of "precedent established by our senior Courts," 41 MJ at 840—that court proceeded to consider

the continued "vitality" of *Booker* and its progeny. The majority's analytical construct for this exercise was as follows:

[W]e must: (1) carefully consider the basis for the questioned precedent (e.g., the Constitution, statutes, or regulations); (2) we must clearly articulate a change in circumstances warranting departure (e.g., a recent decision of the United States Supreme Court re-interpreting a principle of constitutional law upon which the questioned precedent was based); and (3) though we do not pretend to be clairvoyant, we must apply the law in accordance [with] what we believe our senior Courts would now hold, given a change in circumstances.

41 MJ at 840–41.

Following this construct, the court's opinion reflects the following views. First, the bases of "the *Booker* rule," as the court below frequently referred to it, appeared to be "principles of Fifth and Sixth Amendment constitutional law.... Insofar as nonjudicial punishments are concerned, former Chief Judge Everett may have based his adherence to *Booker* [in *Mack*] on" an earlier-mentioned policy of the Department of Defense. *Id.* at 841.

Second, since *Booker* and *Mack,* the Supreme Court's decision in *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), has eliminated the civilian world's Fifth and Sixth Amendment barriers to admissibility of convictions like the one in question here. In this connection, other decisions of the Supreme Court reflect that Court's "reservations about mechanically applying its constitutional law holdings on a civilian's right to counsel to the military," citing *Davis v. United States,* 512 U.S. 452, 457–58 n. *, 114 S.Ct. 2350, 2354 n. *, 129 L.Ed.2d 362 (1994); and reflect that "particular deference must be given to Congress' determination as to what process is due" in the military under the Due Process Clause, citing *Weiss v. United States,* 510 U.S. 163, 175–77, 114 S.Ct. 752, 760, 127 L.Ed.2d 1 (1994). 41 MJ at 841, 842.

Finally, the court below made clear its own view as to how all this should affect the state

of the law, with a closing comment as to whether it expected that this Court would agree:

> The Court of Military Appeals did not base the *Booker* rule on "military due process[, which is not a self-standing principle of law]. Instead, it based the rule on principles of constitutional law, as it then interpreted them. Seventeen years later, those principles have been clarified by the Supreme Court. Armed with that clarification, we are of the view a different rule must now be applied.

> Based on the foregoing, we have concluded that a reexamination of *Booker* is timely and appropriate, and upon such reexamination we have found no basis in law upon which to continue to apply the *Booker* rule....

> For the reasons noted above, we also believe the United States Court of Appeals for the Armed Forces would now be of the same view.

41 MJ at 844–45.

Judge DeCicco wrote an opinion, joined by Chief Judge Larson, dissenting in part. While they agreed with the majority that *Nichols* should lead to an overruling of *Booker*, they believed that such a move was not their prerogative. Judge DeCicco wrote:

> Unless expressly overruled by the U.S. Supreme Court, the holdings of the Court of Appeals for the Armed Forces must be followed by the Courts of Criminal Appeals no matter how obsolete the judges of the Courts of Criminal Appeals think those holdings to be.... The orderly administration of justice and the interests of consistency among the services are not well-served when one of the Courts of Criminal Appeals announces it is no longer bound by the existing precedent of the Court of Appeals....

> Although limited and criticized, *Booker* has not been expressly overruled by the Court of Appeals or the Supreme Court. The proper course for us to take in this case is to follow *Booker* while acknowledging *Nichols*, and to express our view

that it is time for the Court of Appeals to overrule *Booker*.

41 MJ at 845.

## II

When an intermediate appellate court sets out to discover whether it continues to be bound by precedent of a higher court, which that higher court has not repudiated, it undertakes a risky venture. While negotiating such a path is not inevitably fatal, it is so marked with pitfalls that it should not be undertaken with temerity.

For the second time this term, we confront a case in which a Court of Criminal Appeals has concluded that the underlying rationale of a decision in this Court's corpus of jurisprudence no longer is valid for some reason, so that precedent no longer must be followed. In the first, *United States v. Allbery, supra,* the Air Force Court of Criminal Appeals reasoned that, because it believed that the public policy that had formed the basis of one of this Court's earlier decisions had changed, " 'it no longer ma[de] sense to follow' " that decision. 44 MJ at 227, quoting from 41 MJ at 502. In holding that the Air Force court had acted outside the scope of its authority, we wrote:

> In the absence of a superceding statute or an intervening decision of this Court or the Supreme Court of the United States, [our precedent case] was absolutely binding on the Court of Criminal Appeals.

> If that court believed that the underlying logic of that decision had changed in the meantime, its recourse was to express that viewpoint and to urge our reconsideration of our precedent.... Beyond that, however, the court was bound either to follow [that precedent] or to distinguish it. It did neither and, so, erred.

44 MJ at 228.

The driving force behind the firmness of our position in *Allbery*—which we reiterate here—has nothing to do with judicial ego; rather, it has everything to do with judicial order. As Judge DeCicco cogently wrote in his dissenting opinion below:

The reason for this rule is simple: to prevent chaos and confusion within the military justice system.

41 MJ at 845.

Indeed, this case illustrates the travails that confront an intermediate court in an effort to free itself from what appears to be binding precedent. Without endorsing the majority's analytical construct, quoted earlier, some comment about the court's following that model that it set for itself serves the point.

First, in "carefully consider[ing] the basis for the questioned precedent" of *Booker* and *Mack*, the court below assumed the responsibility of fully and precisely discerning that basis. It indicated its view that the basis was an interpretation of the Fifth and Sixth Amendments that *Nichols* had modified and, to some extent, an overtaken policy of the Department of Defense. While these matters surely were in the mix, the lead opinion in *Mack* reveals concerns, as well, with a service member's *statutory* counsel and related rights when confronting criminal allegations.

The *Mack* opinion observed, "The Code and the Manual only make provision for detailing defense counsel for general and special courts-martial. *See* Article 27, UCMJ, 10 USC § 827; para. 6, Manual" for Courts-Martial, United States, 1969 (Revised edition). 9 MJ at 312. Referring back to this, the opinion later acknowledges the argument "that, since an accused has a means of having his case tried by a court-martial wherein he will be provided counsel, he waives any right to counsel by not utilizing the means which have been made available to him for obtaining counsel." *Id.* at 314. Importantly, the opinion then noted that "*the assistance of counsel is often essential in informing an accused person about his rights and their significance.*" *Id.* at 314 (emphasis added). Even more forthrightly, the opinion later reads:

> Since there is no constitutional basis for the *Booker* requirement of opportunity to consult with counsel, it can best be justified as a practical means of implementing the right to decline nonjudicial punish-

ment, which Congress granted accused persons—just as the Supreme Court utilized a right of consultation with counsel as a means of implementing, for persons subject to custodial interrogation, their Fifth Amendment privilege against self-incrimination.

*Id.* at 320.

In other words, besides the constitutional and regulatory considerations that the court below identified as bases of *Mack*, the Court as well was concerned with implementing the statutory counsel rights of a military accused in the context of the stepped-process design of the military justice system. When the Court of Criminal Appeals failed to discern this important supporting prop for "the *Booker* rule," it was destined from the outset to run aground.

The lower court's failure in this regard, likewise, marred its second and third steps. It could not "clearly articulate a change in circumstances warranting departure" or hope to conjure how this Court "would now hold, given a change in circumstances," when it did not fully discern the underpinnings of our precedent. This doomed what, in any event, already was a forbidding challenge of group psychoanalysis of this Court so as to predict our view of perceived changes in circumstances and their legal impact on our precedent.

Accordingly, as in *Allbery*, we now hold that the Court of Criminal Appeals erred when it held itself freed of this Court's binding precedent.

### III

■ At a similar stage in our opinion in *Allbery*, we recognized that, if the Court of Criminal Appeals had followed our precedent even while expressing its disagreement with it, we likely would have confronted a certified issue from the Judge Advocate General asking us to reconsider the continued vitality of that precedent. "In that spirit, we ... reexamined the basis" of our precedent there and "decline[d] to depart from it." 44 MJ at 228. In the same spirit, we do so here, as well, and with the same result.

In Article 15(a), UCMJ, 10 U.S.C. § 815(a), Congress specifically provided protection for the overwhelming number of servicemembers against involuntary subjugation to nonjudicial punishment by commanders. The sole exception were members "attached to or embarked in a vessel." All others expressly were granted the right to "demand trial by court-martial in lieu of such punishment."

In a similar vein, Congress instructed that "[n]o person ... may be brought to trial before a summary court-martial if he objects thereto." In the face of such an objection, the member may be ordered to trial "by special or general court-martial as may be appropriate." Art. 20, UCMJ, 10 USC § 820.

In other words, by careful design, Congress structured the court-martial system to ensure that, with the single exception mentioned earlier, no member of the armed forces may be punished in any way for violating the Uniform Code of Military Justice without an opportunity, first, to demand a judicial trial at which that member statutorily is guaranteed representation by detailed military defense counsel. Art. 27(a)(1), UCMJ, 10 USC § 827(a)(1). "The *Booker* rule," as modified by *Mack*, does no more than ensure that such a servicemember does not ignorantly "waive" this important protection afforded by Congress. The right to force the issue into a forum at which an accused is entitled to defense representation is little more than theoretical if that accused is unaware of it when he decides whether to accept nonjudicial punishment or summary court-martial. An accused is not well-served by that situation, and neither is the system that Congress so artfully designed.

Accordingly, in the words of the lead opinion in *Mack:*

[A]n accused may properly object to admission of a record of prior nonjudicial punishment [or summary court-martial] which does not recite that he was offered some opportunity to consult with counsel. Also, even if the form purports to have offered him an opportunity for such consultation, the objection would be valid, if by credible evidence, he persuades the trial judge that, despite the form's recital to the contrary, he was not offered such an opportunity or that, although he exerted every reasonable effort to see a lawyer before receiving nonjudicial punishment [or summary court-martial], he could not do so. Under such circumstances the purported offer of an opportunity to consult with counsel is a sham or is illusory and should be disregarded.

9 MJ at 323. *See United States v. Kuehl,* 11 MJ 126 (CMA 1981) (record of summary court-martial admissible where accused advised he had right to representation at the summary court-martial but not advised of right to consult with counsel before deciding whether to accept summary court-martial).

## IV

During the presentencing proceedings at appellant's special court-martial, the military judge admitted into evidence over defense objection a record of a previous summary court-martial that did not reflect that appellant had been advised consistent with *Booker.* That ruling was error when made, *see United States v. Mack, supra,* and it remains error under our holding today.

In considering whether this evidentiary error may have been harmless, we have noted that this appeal is from a conviction of two unauthorized absences; that, coincidentally, the summary court-martial that was improperly considered was for four specifications of unauthorized absence, as well as for one specification of missing a ship's movement; and that the sentence imposed on appellant for the two unauthorized absences included confinement for 60 days and a punitive discharge—not an insignificant sentence. Considering these circumstances, we cannot eliminate the possibility of prejudice from this error. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

## V

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside as to the sentence. The record of trial is returned to the Judge Advocate Gen-

eral of the Navy for remand to that court for further review.

Judge SULLIVAN concurs.

COX, Chief Judge (concurring in part and in the result):

I agree that the Court of Criminal Appeals erred in disregarding the precedents of this Court. Furthermore, I remain unconvinced that *United States v. Booker*, 5 MJ 238 (CMA 1977), and its progeny should be overruled. Lastly, because there are considerable differences between the sentencing procedures in the United States District Courts, wherein district judges do all the sentencing pursuant to sentencing guidelines, and the sentencing procedures in courts-martial, I do not think that *Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), requires us to overrule our precedents. *See Nichols, supra* at 748–49 n. 12, 114 S.Ct. at 1928 n. 12.

Were I writing on a clean slate, I might conclude that military law does not require that a servicemember receiving nonjudicial punishment under Article 15, Uniform Code of Military Justice, 10 USC § 815, be advised of his or her right to talk with a lawyer, as a condition precedent to consideration of the servicemember's service record by a sentencing authority. The statute is silent, and quite frankly, I take no comfort in the decisions of the Supreme Court relied upon in *Booker* as creating such a requirement. And, with all due respect to my colleague, the logic of saying that, because counsel is required in a special or general court-martial, the right to counsel in making the decision whether to accept or reject nonjudicial punishment is therefore dictated is tenuous at best.

Nevertheless, I remain unconvinced that the Services have made a case for us to overrule our precedents. If we enjoyed military-judge sentencing, perhaps different considerations would promote a different result. Quite frankly, the advent of sentencing guidelines in the federal and state systems seemed to play an important role in the *Nichols* decision.

In the final analysis, the entire system of military justice seems to benefit by the involvement of attorneys in the process. Commanders are less likely to offer nonjudicial punishment for spurious charges; servicemembers are less likely to refuse nonjudicial punishment if the facts are against them; and servicemembers are less likely to feel railroaded and unfairly treated if they have the opportunity to consult with someone exercising independent critical judgment about the case. I recognize there are some negatives, such as delays caused by unavailability of defense counsel or conflicts of interest among multiple servicemembers, but on balance, I am reminded of the words of the Judge Advocate General of the Navy, Rear Admiral Harold E. Grant: "Military justice is the most important thing that we do in the Navy JAG Corps." * I say, Amen! Let's do it right and let's do it well.

GIERKE, Judge (concurring in part and in the result):

I agree that the Court of Criminal Appeals had no authority to disregard our decisions in *United States v. Booker*, 5 MJ 238 (CMA1977), and *United States v. Mack*, 9 MJ 300 (CMA1980). *See United States v. Allbery*, 44 MJ 226 (1995). Accordingly, I agree with the majority's resolution of the granted issue.

I decline to join Parts III and IV of the lead opinion. The question whether we should overrule *Booker* and *Mack* is not properly before us. Appellant has not asked us to overturn those decisions, and the Judge Advocate General has not certified the issue. *See* Art. 67(a)(2), Uniform Code of Military Justice, 10 USC § 867(a)(2) (1989). I specifically distance myself from any suggestion in the lead opinion that there is a statutory right to counsel for nonjudicial punishment or summary courts-martial.

---

* Made on the occasion of the retirement of Commander Mary T. Hall, JAGC, USN, on August 31, 1996.

CRAWFORD, Judge (dissenting):

The majority undermines truth in sentencing and promotes inequality among servicemembers who are tried by courts-martial. Neither the Constitution, the Uniform Code of Military Justice, congressional intent, the Rules for Court–Martial, nor public policy requires the result mandated by the majority.

In *Loving v. United States,* —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996), the Supreme Court held that, under Articles 18, 36, and 56, UCMJ, 10 USC §§ 818, 836, and 856, respectively, the President could determine aggravating factors in death penalty cases. Now, this Court holds that the President does not have the authority to determine admissibility of punishments under Article 15, UCMJ, 10 USC § 815, and summary courts-martial.

There can be little disagreement that this Court could not dictate the right to counsel at either a summary court-martial or in proceedings held under Article 15. But that is exactly what the Court did, indirectly, in *United States v. Booker I,* 5 MJ 238 (CMA1977). *United States v. Mack,* 9 MJ 300 (CMA1980), recognized the weakness of the *Booker I* rationale. In *Mack,* this Court justified *Booker I* by relying on *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). Since that time, the Supreme Court has overruled *Baldasar. Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994).

The court below made an honest effort to abide by the doctrine of *stare decisis.* Numerous changes have taken place since *Booker I* and *Mack:* A new Manual for Courts–Martial with no right to counsel at Article 15 proceedings—para. 4c(1) & (2), Part V, Manual for Courts–Martial, United States (1995 ed.), and summary courts-martial, RCM 1301(e), Manual, *supra* ("The accused at a summary court-martial does not have the right to counsel."); rules for admissibility of prior punishment—RCM 1001(b)(2) & (3) (no limitation on admissibility of prior Article 15s or prior convictions); direct review by the Supreme Court—Article 67a, UCMJ, 10 USC § 867a; and potential review of summary courts-martial by the Courts of Criminal Appeals and this Court—Art. 69(d), UCMJ, 10 USC § 869(d). The history behind *Booker I* and *Mack* does not justify the majority's conclusion. A brief chronology of that history is as follows:

● *United States v. Alderman,* 22 USCMA 298, 46 CMR 298 (1973) (1–1–1 opinion). Judge Quinn writing for a majority of the Court, Chief Judge Darden dissenting, held that *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), requires either a waiver of counsel or representation by defense counsel at summary courts-martial.

● *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). The Supreme Court held that the *Argersinger* right to counsel did not apply to summary courts-martial.

● *United States v. Booker I, supra* (2–1 opinion). Chief Judge Fletcher writing for a majority of the Court, Judge Cook dissenting, held that absent waiver of counsel or representation by counsel:

  (1) the escalator clause would not apply to summary courts-martial;

  (2) a summary courts-martial conviction was not admissible for sentencing;

  (3) Article 15s were not admissible for sentencing; and

  (4) Article 15s and summary courts-martial were limited to military-type offenses.

● *United States v. Booker II,* 5 MJ 246 (CMA 1978). (2–1 opinion). Judge Cook writing for a majority of the Court, Chief Judge Fletcher dissenting, struck (4) from *Booker I.*

● *United States v. Mack,* 9 MJ 300 (CMA 1980). (1–1–1 opinion). Chief Judge Everett supported the *Booker I* rationale as to the escalator clause based on *Baldasar.*

● The Supreme Court overruled *Baldasar* in *Nichols v. United States, supra.*

*Booker I* has been criticized by Judges of this Court; other judges, *see, e.g.,* Judge Gasch, *Who is Out of Step?,* The Army Lawyer 1, 5 (June 1978) ("Again the Court [in *Booker I* ] has upset the balance between justice and discipline with this unnecessary

unrealistic conclusion."); and commentators, see, e.g., Comment, *United States v. Booker: The Institutional Implications of the Court of Military Appeals Immunity from Direct Supreme Court Review,* 59 B.U.L.Rev. 754 (1979).

While the majority criticizes the court below for not following the doctrine of *stare decisis,* it is the majority of this Court that is not applying the doctrine. The majority should follow Supreme Court precedent which holds that *Booker I, Mack,* and Article 27 are not bases for requiring waiver of the right to counsel or representation or consultation with counsel prior to Article 15s and summary courts-martial.

In *Weiss v. United States,* 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994),* the Supreme Court recognized that courts should pay special deference to congressional legislation regarding the rules applicable to the military. The Supreme Court has also recognized the validity of the rules promulgated by the President pertaining to aggravating factors in capital cases. *Loving v. United States, supra.* Lastly, the Court in *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986), acknowledged that courts should give special deference to regulations promulgated by the services.

Unless the majority is basing their decision on public policy or supervisory authority, they should follow the normal hierarchy of express rights. By doing so I believe that we maintain our role as jurists. "It is not wisdom but Authority that makes a law."

Thomas Hobbes, *Dialogue Between a Philosopher and a Student of The Common Laws of England* 55 (Chicago 1971). However, when judges disregard the validity of properly promulgated rules and rely upon their own judgment, they run the risk of stepping across the separation-of-powers boundary by acting as legislators and engaging in rule-making.

There may be some fairness aspect to the decision of the majority. But fairness means equality of treatment in a system where servicemembers are spread throughout the world. In effect, the majority's application of an implied-fairness rationale without reference to the Constitution, a statute, or a Rule for Courts–Martial is tantamount to an overhaul of the criminal justice system by judicial fiat.

The Court was quick in *Alderman* to apply *Argersinger.* Now, 20 years later, it is hesitant to apply *Middendorf.* As Judge Duncan stated: "With certain exceptions, criminal constitutional standards announced by the United States Supreme Court are applicable as precedent to this Court ... unless there is demonstrated a military necessity demanding nonapplicability." *Alderman,* 22 USCMA at 303, 46 CMR at 303. Judge Duncan stressed that, absent *Argersinger,* he would be inclined to continue following the procedure set forth by Congress, but he felt constrained to follow the Supreme Court precedent. If this Court applied such constraint, today's holding would be different.

---

* The Chief Justice stated: "Petitioners' argument also ignores the fact that Congress has not hesitated to expressly require the separate appointment of military officers to certain positions." *Weiss v. United States,* 510 U.S. 163, 171, 114

S.Ct. 752, 757, 127 L.Ed.2d 1 (1994). He went on to observe: "Judicial deference thus 'is at its apogee' when reviewing congressional decision-making in this area." *Id.* at 177, 114 S.Ct. at 760–61.