IN THE CASE OF


UNITED STATES, Appellee

v.

Matthew S. KAHMANN, Private
U.S. Marine Corps, Appellant

No. 03-0522

Crim. App. No. 200200355

United States Court of Appeals for the Armed Forces

Argued January 14, 2004

Decided March 23, 2004

EFFRON, J., delivered the opinion of the Court, in which
GIERKE, BAKER, and ERDMANN, JJ., joined.  CRAWFORD, C.J., filed
an opinion concurring in the result.


Counsel


For Appellant:  Lieutenant M. Eric Eversole, JAGC, USNR
     (argued); Commander George F. Reilly, JAGC, USN.


For Appellee:  Major Raymond E. Beal II, USMC (argued);
     Commander Robert P. Taishoff, JAGC, USN (on brief);
     Lieutenant Lars C. Johnson, JAGC, USNR.


Military Judge:  F. A. Delzompo



**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**.


Judge EFFRON delivered the opinion of the Court.

United States v. Kahmann, No. 03-0522/MC

Judge EFFRON delivered the opinion of the Court.

At a special court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his pleas, of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 886 (2000). He was sentenced to a bad-conduct discharge, confinement for 90 days, and forfeiture of $695 of pay per month for three months. The convening authority approved the sentence as adjudged, and suspended all confinement in excess of 30 days pursuant to the pre-trial agreement. The Court of Criminal Appeals initially affirmed the findings while modifying the sentence in an unpublished opinion. The court subsequently vacated that decision and issued a new opinion that affirmed the findings and affirmed the sentence as approved by the convening authority. United States v. Kahmann, 58 M.J. 667 (N-M. Ct. Crim. App. 2003)(en banc).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE COMMITTED PLAIN
> ERROR BY ADMITTING EVIDENCE OF A PRIOR
> SUMMARY COURT-MARTIAL CONVICTION DURING
> PRESENTENCING WHEN THERE WAS NO SHOWING THAT
> ACCUSED HAD AN OPPORTUNITY TO SPEAK WITH
> COUNSEL BEFORE THE SUMMARY COURT-MARTIAL AND
> NO EVIDENCE SHOWING COMPLIANCE WITH THE
> REVIEW REQUIREMENTS UNDER ARTICLE 64, UCMJ.

2

United States v. Kahmann, No. 03-0522/MC

For the reasons set forth below, we hold that admission of the prior summary court-martial conviction into evidence during the sentencing proceeding did not constitute plain error.


I. BACKGROUND

A. RECORDS OF NONJUDICIAL PUNISHMENT
AND CONVICTIONS BY SUMMARY COURTS-MARTIAL

1.   The statutory right to object to nonjudicial punishment proceedings and summary courts-martial

General and special courts-martial serve as the primary venues for the trial of criminal offenses in the military justice system.  See Articles 18-19, UCMJ, 10 U.S.C. §§ 818-819 (2000).  Military judges preside over these courts and qualified counsel represent the parties, subject to narrowly drawn exceptions for certain special courts-martial.  See Articles 18-19, 26, 27 UCMJ, 10 U.S.C. §§ 818-819, 826-827 (2000).  Rule for Courts-Martial 201(f)(1)-(2) [hereinafter R.C.M.].  The rules of evidence and procedure in general and special courts-martial are in many respects quite similar to those applicable to criminal trials in federal civilian courts.  See, e.g., Article 36, UCMJ, 10 U.S.C. § 836 (2000); David A. Schlueter, Military Criminal Justice § 1-7, at 37; § 15-18, at 694 (5th ed. 1999).

The UCMJ also authorizes two expedited procedures for the disposition of minor offenses.  First, commanding officers may use nonjudicial procedures to impose disciplinary punishments

3

upon their subordinates for minor infractions.  Article 15, UCMJ, 10 U.S.C. § 815 (2000).  Under Article 15, service members may receive a variety of minor punishments, such as forfeiture of pay, reduction in rank, imposition of extra duties, restriction to specified limits, and correctional custody for not more than 30 days.  Article 15 procedures are relatively informal, and the service member is not entitled to representation by qualified counsel.  See Manual for Courts-Martial, United States (2002 ed.), Part V.  A service member has the right to demand trial by court-martial in lieu of nonjudicial punishment proceedings, unless the member is attached to or embarked in a vessel.  Article 15(a); see United States v. Edwards, 46 M.J. 41 (C.A.A.F. 1997).

Second, certain commanders may refer charges against enlisted personnel to a summary court-martial for expedited consideration of minor offenses.  Article 20, UCMJ, 10 U.S.C. 820 (2000); R.C.M. 1301(b).  A summary court-martial consists of a single officer, who conducts a simplified, non-adversarial examination of the charges.  The accused is not entitled to be represented by counsel.  See R.C.M. 1301(e); Middendorf v. Henry, 425 U.S. 25 (1976).  The limitations on the sentencing power of a summary court-martial include a prohibition against adjudging a punitive discharge or confinement in excess of 30 days.  Article 20; R.C.M. 1301(d).  Prior to arraignment, an

accused, including a person assigned to or embarked in a vessel, may object to trial by summary court-martial. Article 20; R.C.M. 1303. Upon such objection, an appropriate convening authority may refer the case to a special or general court-martial.

Subject to the limited exceptions outlined above, the effect of these provisions is that any service member facing a nonjudicial punishment proceeding or summary court-martial is entitled to object and insist that any further proceedings take place under formal judicial procedures. Through such objections, a service member may ensure that any further proceedings will take place before a special or general court-martial where a military judge will preside over any further proceedings, the Rules for Courts-Martial and Military Rules of Evidence will apply, and the service member will be represented by qualified legal counsel.

The point at which a service member must decide whether to object to an informal proceeding is an important stage in the military justice process. In recognition of the key role that counsel can play in advising a service member at that point, our Court has limited the admissibility of such records when the accused has not had the opportunity to consult with counsel. See, e.g., United States v. Edwards, 46 M.J. 41, 43 (C.A.A.F. 1997)(citing United States v. Booker, 5 M.J. 238 (C.M.A. 1977));

United States v. Kahmann, No. 03-0522/MC

United States v. Kelly, 45 M.J. 259, 263-65 (C.A.A.F. 1996) (plurality opinion citing United States v. Mack, 9 M.J. 300 (C.M.A. 1980), and Cox, C.J., concurring in part and in the result)).

2.   Sentencing proceedings: nonjudicial punishment records and convictions by a summary courts-martial

In a sentencing proceeding, the prosecution may introduce certain personnel records of the accused, including records of punishment under Article 15.  R.C.M. 1001(b)(2).  The defense may object to the admission of a record on the grounds that it is inaccurate, incomplete, not made or maintained in accord with departmental regulations, or that the record otherwise contains inadmissible evidence.  Id.  The accused also may object on the grounds that he or she was not provided with the opportunity to confer with counsel before deciding whether to demand trial by court-martial.  See Edwards, 46 M.J. at 43.

During sentencing, the prosecution also may introduce prior convictions of the accused, including convictions by summary court-martial.  R.C.M. 1001(b)(3).  Among the objections that may be made to the admissibility of a summary court-martial conviction, the accused may cite the absence of proof of review under Article 64, 10 U.S.C. § 864 (2000).  R.C.M. 1001(b)(3)(B).  In addition, the accused may object to the admissibility of a summary court-martial conviction on the grounds that the accused

6

was not provided with the opportunity to consult with counsel prior to deciding whether to object to the proceeding. See Kelly, 45 M.J. at 264.

B.    CONSIDERATION OF A PRIOR SUMMARY COURT-MARTIAL CONVICTION DURING APPELLANT'S SENTENCING PROCEEDING

At a special court-martial where he was represented by counsel, Appellant was convicted of unauthorized absence, pursuant to his pleas.  During the sentencing proceeding, trial counsel introduced a document from Appellant's personnel records entitled "Record of Conviction by Court-Martial (1070)."  The document contained the following entries: (1) the name of the organization conducting the summary court-martial; (2) the date of trial and a block with a check mark noting that the trial was conducted by summary court-martial; (3) a summary of the charges and specifications, including unauthorized absence, willful disobedience of an order, assault, and communicating a threat; (4) a statement that findings of guilty were returned as to three of the four charged offenses; (5) a block with a check mark noting that Appellant waived representation by counsel; (6) a summary of the sentence; (7) the date of the convening authority's action; (8) a signature block containing a signature of a noncommissioned officer with the title of administrative chief; and (9) Appellant's name.  The check block designed to

7

reflect notification of the disbursing officer was not completed.

Defense counsel did not object to the admissibility of the document. Counsel objected to consideration by the military judge of that portion of the document describing the offenses that did not involve absence on the grounds that such information was irrelevant, and that it was more prejudicial than probative. Counsel expressly stated that the defense objection did not preclude consideration of the summary court-martial conviction for unauthorized absence. The military judge overruled the defense objection. The ruling by the military judge on Appellant's specific objection is not at issue in the present appeal.

The Court of Criminal Appeals affirmed, relying on Appellant's failure to object to the admissibility of the document. Kahmann, 58 M.J. at 668. The court expressly stated that "we are not attempting to abrogate, by this decision, the mandate of Booker/Mack that a servicemember must be afforded an opportunity to consult with counsel prior to accepting nonjudicial punishment (NJP) or a summary court-martial in order for that disciplinary action to be admissible in aggravation at a summary court-martial." Id. Likewise, in this appeal, the Government does not seek to deny servicemembers the right to consult with counsel in such circumstances.

8

II.  DISCUSSION

The granted issue raises two questions concerning the admissibility of the record of Appellant's summary court-martial conviction despite the absence of an objection at trial.  First, whether the record is inadmissible because it does not state expressly that Appellant was provided with the opportunity to consult with counsel prior to electing to proceed with a summary court-martial.  Second, whether the record is inadmissible because it does not state expressly that the required legal review was completed under Article 64.

Under Military Rules of Evidence 103 [hereinafter M.R.E.], a ruling admitting evidence will not be overturned on appeal unless there was an appropriate objection at trial, subject to consideration of plain error.  In a case decided prior to the adoption of M.R.E. 103 that involved the admissibility of a prior summary court-martial conviction, our Court indicated that the military judge had an affirmative duty to ensure that the accused had been afforded an opportunity to consult with counsel and had affirmatively waived the right to object to trial by summary court-martial.  United States v. Booker, 5 M.J. 238, 243-44 (C.M.A. 1977).

In subsequent cases, we have suggested that M.R.E. 103 governs the admissibility of records reflecting summary court-

martial convictions and nonjudicial punishment, see, e.g., United States v. Dyke, 16 M.J. 426, 427 (C.M.A. 1983), although we have not expressly based a decision on that position. We do so today. A document that summarizes a summary court-martial conviction or nonjudicial punishment does not differ in significant respects from other records that are subject to M.R.E. 103. Recognition of the importance of the opportunity to consult with counsel prior to an election concerning a nonjudicial punishment proceeding or a summary court-martial, see Kelly, 45 M.J. at 264, does not require differential treatment with respect to plain error analysis. Accordingly, we hold that admissibility of the record from such a proceeding is governed by the objection and plain error provisions of M.R.E. 103.

We analyze a claim of plain error under the three-part standard of United States v. Powell, 49 M.J. 460, 464-65 (C.A.A.F. 1998); that is, (1) whether there was an error; (2) if so, whether the error was plain or obvious; and (3) if the error was plain or obvious error, whether it was prejudicial. See Article 59(a), UCMJ, 10 U.S.C. § 859(a)(2000).

Appellant contends that the military judge erred in admitting the record of summary court-martial conviction because the document did not state on its face that Appellant had been afforded an opportunity to consult with counsel prior to

electing to proceed with the summary court-martial.  The placement of such a statement on the document may be desirable as a matter of policy, particularly in view of the fact that an objection to the document requires the Government to prove that the accused was afforded the opportunity to consult with counsel, and the Government must do so without compelling the accused to provide such evidence.  See United States v. Cowles, 16 M.J. 467 (C.M.A. 1983).  The admissibility of such a record, however, does not depend upon the placement of such a statement on the face of the document, and the prosecution may prove that Appellant was afforded the opportunity to consult with counsel through other evidence.  See Mack, 9 M.J. at 322-23.  Absent objection by the defense, the prosecution is under no obligation to introduce such evidence.

Appellant cites our opinion in Dyke, 16 M.J. at 427, for the proposition that plain error may be predicated upon irregularities in the document.  In support of this argument, Appellant relies on section 4008 of the Marine Corps Individual Records Administration Manual (IRAM) as the basis for suggesting various irregularities in the document at issue.

Absent timely objection, irregularities do not provide a basis for relief without a showing that any errors were plain or obvious, or that they were prejudicial.  As we noted in Dyke, a document that has "illegible signatures or where some blanks

remain unfilled" would usually not provide the basis for relief in the absence of a trial objection. 16 M.J. at 427. In Dyke, the errors were apparent on the face of the document. The document contained four places where the signature of Appellant or his commander should have appeared, and each was blank. We concluded that the document "was so incomplete on its face that the judge should have excluded it on his own motion." Id.

Appellant has identified three regulatory errors in the document at issue in the present case: (1) failure to include language regarding consultation with counsel prior to the summary court-martial; (2) failure to check the block indicating that the disbursing officer has been informed of the sentence; and (3) failure to include either the signature of the Appellant's commanding officer or an indication that the person signing the form has done so by direction of the commanding officer. Each of these matters is distinguishable from the significant facial defects of the document at issue in Dyke.

As noted by Appellant, section 4008 of the IRAM summarizes our case law regarding admissibility of the record of a summary court-martial conviction, and provides a model paragraph that "may" be inserted on the reverse side of the document to reflect consultation with counsel. This provision, however, does not establish a mandatory requirement. Use of the term "may" in this context reflects non-binding guidance. The absence of the

model paragraph on the face of the document introduced at Appellant's trial does not establish a plain or obvious error, particularly in light of our case law, which does not require such a notation on the document. See Mack, 9 M.J. at 322-23.

With respect to the fact that the document was signed by a noncommissioned officer rather than an officer acting "by direction" of the commander as provided in the IRAM, we note that no such requirement appears on the face of the document introduced at Appellant's trial. The document at issue contains a signature by a noncommissioned officer with the title of administrative chief. It is not unusual in the armed forces for noncommissioned officers in administrative positions to sign official documents that summarize actions taken by officers. To the extent that there was a failure to follow an administrative requirement in the personnel manual, the defect was not manifest on the face of the document. While there may be some records in which the absence of an officer's signature might constitute a plain or obvious error, this is not such a case. There is one obvious error on the face of the document -- the absence of a check mark in the block indicating notification to the disbursing officer. In the present case, however, Appellant does not claim any prejudice that might have resulted from the absence of the check mark, such as an error in computing or applying the adjudged forfeiture of pay. Under these

13

circumstances, any error by the military judge in admitting the document without inquiring into the missing check mark did not constitute prejudicial plain error.

Similar considerations apply to Appellant's contention that the military judge erred by admitting the record of a summary court-martial conviction when the document did not contain a notation that review had been completed under Article 64. See R.C.M. 1001(b)(3)(B). Appellant has not identified any statutory, regulatory, or judicial requirement to place such a notation on a document summarizing a conviction by summary court-martial. If the defense objects to the admissibility of a document summarizing a summary court-martial conviction on the grounds that there is no evidence of review under Article 64, the burden is on the prosecution to demonstrate that such review has been completed. The opportunity to object is sufficient to protect Appellant's rights under R.C.M. 1001(b)(3)(B), and the military judge is not required to inquire on his or her own motion whether such review has been completed.

### III. CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

CRAWFORD, Chief Judge (concurring in the result):

While I agree with the majority that there was a waiver in this case, I write separately because I believe this Court has a judicial obligation to follow Supreme Court precedent regarding the right to counsel, absent a provision in the Manual for Courts-Martial, United States (2002 ed.) or military necessity for doing otherwise. The Court is not an ombudsman which can decide the result it wants, and then pick and choose from the Superior Court's precedents to suit that result. Nor may it act as a policy maker or legislator. By arbitrarily deciding when and whether to follow the constitutional precedents of the Supreme Court, this Court not only undermines the legitimacy of its adjudication, but also undermines public confidence in the stability and predictability of military justice.

When the Supreme Court interprets the Bill of Rights, this Court is bound by those rulings and their rationales unless they can be distinguished. By the same token, when the Supreme Court specifically holds that the right to counsel does not apply, this Court is not at liberty to reject that decision. As to the right to counsel, this Court applied the rationale of Argersinger v. Hamlin, 407 U.S. 25 (1972), in holding that, absent representation by counsel, or waiver of the right to counsel, a summary-courts martial would not be admissible during the sentencing procedures or for any other purpose. United

States v. Alderman, 22 C.M.A. 298, 46 C.M.R. 298 (1973).

However, when the Supreme Court was specifically faced with that

issue, it held that the right to counsel did not apply at

summary courts-martial. Middendorf v. Henry, 425 U.S. 25

(1976). This Court is not at liberty to disregard that holding.

It is important to describe in detail this Court's history

of selectively applying Supreme Court precedent as to the right

to counsel. First, in Alderman, this Court adopted the Supreme

Court rationale in Argersinger, 22 C.M.A. at 299-300, 46 C.M.R.

at 299-300. Although Argersinger was a civilian habeas action

and did not address summary courts-martial, this Court, in

Alderman, extrapolated from Argersinger a requirement for a

waiver of counsel or representation by counsel at summary

courts-martial for its results to be admissible at a subsequent

court-martial. Four years later, the Supreme Court in

Middendorf held that Argersinger did not apply to summary

courts-martial. Nevertheless, the very next year this Court

refused to follow the Supreme Court and rejected the Middendorf

holding and rationale in United States v. Booker, 5 M.J. 238

(C.M.A. 1977)(Booker I). In so doing, this Court in Booker I

implicitly created a right to counsel at a summary courts-

martial by holding

> that absent waiver of counsel or representation by
> counsel:

United States v. Kahmann, No. 03-0522/MC

> (1) the escalator clause would not apply to summary courts-martial;
> (2) a summary courts-martial conviction was not admissible for sentencing;
> (3) Article 15s were not admissible for sentencing; and
> (4) Article 15s and summary courts-martial were limited to military-type offenses.

United States v. Kelly, 45 M.J. 259, 266 (C.A.A.F. 1996) (Crawford, J., dissenting).

In United States v. Booker, 5 M.J. 246 (C.M.A. 1978)(Booker II), the Court reconsidered Booker I and held that Article 15s and summary courts-martial were not limited to military-type offenses. In United States v. Mack, 9 M.J. 300, 311 (C.M.A. 1980), the Court revisited the Booker I rationale and, in a 1-1-1 opinion, sought to justify its rejection of Middendorf by applying the escalator clause based on Baldasar v. Illinois, 446 U.S. 222 (1980). When the Supreme Court later removed the Baldasar underpinnings in Nichols v. United States, 511 U.S. 738 (1994), this Court was once again faced with the opportunity to apply current Supreme Court precedent with respect to the right to counsel. Yet, it refused to do so in Kelly, 45 M.J. at 264, and continued this Court's selective application of constitutional precedents of the Supreme Court.

Now, once again this Court has the opportunity to correct its prior misapplication of Supreme Court decisions. Sadly, however, not only does the majority continue this Court's

3

selective application of constitutional precedents established by the Supreme Court, but now the majority also seeks to justify its position by creating a new "important stage" analysis. It is unclear what this "important stage" analysis means to practitioners. In the future it might be compared with the "critical stage" analysis which has been employed by the Supreme Court in numerous cases. Neither the "critical stage" analysis nor its possible new military analog was mentioned or cited in the Middendorf case. At the time of adopting the Uniform Code of Military Justice, Congress knew the import of various decisions and the rights available to the accused at a summary court-martial, and the duties and responsibilities of the summary court-martial officer. And at the time of Middendorf, the Supreme Court knew the consequences that could result from a summary court-martial and the potential for greater punishment if the accused opted to object to the summary court-martial. Yet, the Supreme Court still held that the right to counsel does not apply at the summary court-martial.

The accused's option to obtain greater rights at a proceeding is not unique to the military, but is also present in both the state and federal systems. For example, the defendant who appears before a United States federal magistrate judge in a misdemeanor case has the right to be tried before a United States district court judge, including a jury panel. But there

is no requirement that because this option is available, there must be an advisement of the right to consult with counsel before opting for a trial before a district court.  In the magistrate court versus district court arena, the defendant may opt for a district court judge or a jury subjecting him or her to a potential greater punishment.  Even so, it was not the potential greater punishment, but rather the punishment that may be imposed at the magistrate judge court level or misdemeanor court level on which the Supreme Court relied in determining when an individual is entitled to counsel.

In addition to the legal reasons already mentioned, there are practical reasons for why we should reexamine Booker I and Mack.  The majority undermines truth in sentencing by denying the sentencing authority a true picture of the Appellant's record.  The military employs very comprehensive sentencing procedures which allow the defense to introduce extensive evidence in extenuation and mitigation, as well as grant the accused expansive allocution rights.  The Government should likewise be able to present a full picture and not be undercut by this Court's refusal to apply Supreme Court decisions.

Furthermore, our forces are deployed worldwide fighting the war on terrorism, and as a result, judge advocates are fully engaged not only in the military justice arena, but also in operational law, legal assistance, and numerous other complex

legal fields, at camps, bases, and fleets serving by their side. The number of lawyers available is limited. Many of these are in resident training, or serving in non-legal billets, and thus unavailable for varying periods of time to discharge legal duties. 54 M.J. CXXXII, at CXLV. By continuing implicitly to impose on the services by judicial decree a right to counsel prior to accepting Article 15s and summary courts-martial, this Court usurps the legislative and executive powers and does what both Congress and the President have elected not to do: further burden commanders and senior legal officers in their resolution of operational matters. As the Supreme Court stated in Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953):

> [J]udges are not given the task of running the Army.... Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters.

For these reasons, I must respectfully decline to join the majority opinion.